COLBY v. VILLAGE OF LA GRANGE.

(Circuit Court, N. D. Illinois. January 14, 1895.)

1. EMINENT DOMAIN—EXTENT OF POWER.

Complainant owned land adjacent to the village of L. The village began a proceeding in the nature of eminent domain in a state court, to obtain an easement over plaintiff's land for the flow of its sewage, not seeking, in such proceeding, to obtain any particular portion of land for a culvert, drain, or cesspool, but simply proposing to throw its sewage upon complainant's land, leaving him to dispose of it as he could. The village had no power of eminent domain, except as accessory to its power to make public improvements, including the power to construct a system of sewage

disposal. *Held*, that neither the power to make public improvements nor the power of eminent domain extended to such an invasion of private property as was proposed by the village, and that the prosecution of the proceedings for that purpose would be enjoined.

2. EQUITY—HE WHO SEEKS EQUITY MUST DO EQUITY.

It seems that, if it should appear that the best method of sewage disposal for the village involved the use of complainant's land, and he refused to accede to a reasonable plan, equity would decline to interfere by injunction with the proceedings of the village.

This was a suit by Charles L. Colby against the village of La Grange to enjoin the prosecution of proceedings in a state court. Defendant demurs to the bill.

J. L. High and Page & Booth, for complainant.

Richard Prendergast and W. R. Burleigh, for defendant.

GROSSCUP, District Judge. The complainant is the owner of a tract of land lying within the village of Grossdale, and adjacent to the village of La Grange. The bill charges that the village of La Grange, in effectuation of its scheme of an outlet for its sewage into the Des Plaines river, proposes to bring the sewage by means of sewer drains to the land of the complainant, and there discharge the same, thereby creating a nuisance upon said land, and doing irreparable injury to the rights of the complainant. The supplemental bill shows that since the filing of the original bill the village has begun a proceeding in the nature of eminent domain in the courts of the state to obtain an easement over the complainant's land for the flow of its sewage after leaving the sewers of the defendant, and, in effect, asks for an injunction against the further prosecution of this eminent domain suit. To the supplemental bill the defendant now demurs, and likewise moves the court to postpone action upon either the original or supplemental bills until the eminent domain proceedings have been concluded. Both the demurrer and motion of defendant turn upon the question whether the village can lawfully, by proceedings of eminent domain, obtain an easement upon and over the lands of the complainant for the flow of its sewage. It is not proposed by this proceeding to take any particular strip of land, and pay the complainant its value and the incidental damages, according to the constitutional provisions, but simply to obtain the privilege or easement of discharging its sewage upon and across this tract of land.

My attention has been called to no case where such an exercise of the right of eminent domain has ever been considered, and counsel on the argument have stated that no such cases are in existence. The village has no right of eminent domain whatever, except such as is bestowed upon it by statute. The original power in bulk, whatever it may comprehend, lies in the state, and is only delegated to other bodies corporate by express legislation. Such legislation must necessarily be ineffectual to carry the power claimed, unless it clearly evinces a legislative intention to that end.

Now, the only power of eminent domain expressly conferred upon cities and villages is that accessory to their power to make public

improvements. In such respect as they have no right to make
public improvements, there exists no power of eminent domain.
The latter, therefore, is limited by the field of the former. Now,
what power respecting the disposition of sewage is conferred upon
villages? I know of none which permits them to empty their sew-
age upon a private owner's land. Unquestionably they can dispose
of it by constructing culverts, drains, sewers, and cesspools, as ex-
pressly provided in the statute, and perhaps by conveying it to out-
lying fields owned by such municipality for destruction and treat-
ment, or by conveying it through intermediate tracts to natural
drains and water courses. But clearly there is no power to dump
it untreated, and with its distasteful and unhealthful consequences,
upon the property of a private owner, leaving it to him to take care
of as best he can. The village does not seek in its proceeding to
obtain land from the complainant for any culvert, sewer, drain, or
cesspool, or for a locus for the treatment and disposal of the sewage.
It proposes, simply, to throw upon the complainant's land its sewage,
and thus compel him to provide the necessary drains, culverts, sew-
ers, or other methods of disposing of it. Such an interpretation of
its right would, in my judgment, go beyond the express authority
conferred.

This conclusion, of course, does not affect whatever rights
the defendant may have growing out of the existence of a natural
drain or water course across defendant's lands. If such a drain
or water course is naturally in existence, the defendant may be
entitled to its use as an outlet for its sewage. And whatever right
in this respect it has is not dependent upon, or enlarged or in any
way affected by, the right of eminent domain. Indeed, the right to
condemn for the purposes sought presupposes the nonexistence of
a natural right of outlet to the village. Both the demurrer and the
motion of the defendant will, therefore, be overruled.

I deem it proper to repeat what I stated on the oral argument.
The complainant is in a court of equity, asking for an injunction
against the defendant's proposed disposal of its sewage. The de-
fendant is a growing village, and every consideration of public health
and justice requires that it should have some outlet for its sewage,
or some reasonable means of disposing of it. If the situation is such
that the clearly better course, both by reason of topography and ex-
pense, is across the complainant's lands, and the complainant refuses
to accede to a system that is reasonable and just, I am very much in-
clined to think a court of equity would not entertain his bill for re-
lief. I therefore suggest that, instead of going into a long trial upon
the parties' legal and technical rights in this controversy, the defend-
ant village offer to the complainant a practical and reasonable
scheme of sewage disposal.