VINEGAR BEND LUMBER ·COMPANY *v.* OAK GROVE & GEORGE-
TOWN RAILROAD COMPANY.

[43 South. Rep., 292.]

1. EMINENT DOMAIN. *Special court. Jurisdiction.*

The special court of eminent domain created by Code 1892, ch. 40 (Code 1906, ch. 43), providing for the enforcement of the right of eminent domain, is only authorized to determine the amount of damages to be awarded defendant and has no jurisdiction to determine the question of the right of the plaintiff to condemn land.

2. SAME. *Appeal.*

Upon appeal to the circuit court from the judgment of a special eminent domain court, the circuit court, although the trial is *de novo,* has no more jurisdiction than the special eminent domain court.

3. SAME. *Legislative power. Const. 1890, sec. 17. Statutes constitutional.*

It is competent for the legislature to create a special tribunal for the enforcement of the right of eminent domain without giving it jurisdiction to determine the question of the right of the plaintiff to condemn land, since the right guaranteed by the constitution of 1890, sec. 17, declaring that the question whether the contemplated use for which it is proposed to condemn private property is a public use shall be a judicial question and as such determined without regard to legislative assertion that the use is a public one, may be protected by a suit in equity enjoining the appropriation of the property.

FROM the circuit court of Greene county.

HON. WILLIAM H. HARDY, Judge.

The railroad company, the appellee, was plaintiff in the court below; the lumber company, the appellant, was defendant there. From a judgment in plaintiff's favor condemning land (as was claimed) to a public use, the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Ford & White; Charles L. Bromberg,* and *McWillie & Thompson,* for appellant.

Private property cannot be taken for public use at all *except, in the manner prescribed by law.* Give full force to these six words, *"in the manner prescribed by law."* If the legislature has not prescribed a lawful manner, a constitutional manner, by which private property can be taken for public use, then it cannot be taken at all.

The constitution provides that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question. What does the phrase, *"and whenever an attempt is made to take private property"* mean? Does it mean when some trespasser, with high hand and multitude of people, undertakes to drive the land owner from his premises? Certainly not. It means whenever an attempt is made to take private property *in the manner prescribed by law,* referred to in the preceding part of the constitutional section. So, the constitutional provision means that whenever an attempt is made to take private property for a public use *in the manner prescribed by law,* the question whether the contemplated use be public is a judicial one.

Doing full justice to the appellee and admitting all it claims, this was a proceeding by it *in the manner prescribed by law to condemn private property to an alleged public use,* and by the very terms of the constitution the question whether the use be a public one, presented in the special tribunal created in the manner prescribed by law, is a judicial question to be determined, of course, in that proceeding and in that judicial tribunal. The legislature is required by law to prescribe a mode in which private property may be taken for a public use, but it is enjoined by the constitution itself to provide that the question of whether the use be public in such a proceeding shall be a judicial one. The very terms of the constitution makes the conclusion inescapable

that the tribunal established for the purpose of enabling those claiming the right to subject private property to public use shall have the power to determine whether the alleged use be or be not a public one.

There is nothing in the code chapter entitled "Eminent Domain" which precludes the citizen, when another seeks to subject his property to an alleged public use, from contesting the nature of the use before the tribunal established by law for the regulation of the taking of private property for public use. On the contrary, Code 1906, § 1862; Code 1892, § 1687, shows that an issue must be ready for trial before a jury is organized. After the court is organized, evidence may be introduced by either party (Code 1906, § 1864; Code 1892, § 1689), before the jury under the direction of the justice of the peace. The justice of the peace controls and exercises judicial functions over the matter of evidence at least. Section 17 of the constitution makes the question of whether the alleged use be public a judicial one. Are not judicial questions to be decided by the court and not by the jury?

The appellee does not give sufficient force and effect to the provisions of sec. 17, constitution 1890, providing that in proceeding to condemn private property for public use, "the question whether the contemplated use be public shall be a judicial question and as such determined without regard to legislative assertion that the use is public." Before the adoption of the Constitution of 1890 the question was perhaps to some extent legislative. *It never was an executive question. Now, it is most unquestionably a judicial question.* Every person whose property is sought to be taken for public use has a right to have the question of the character of the use determined by a court. This right cannot be taken away from the citizen without doing violence to the constitution itself. The appellee claims the right to exercise the power of eminent domain by virtue of a charter which has been approved by the governor and attorney-general.

These executive officers do not grant the powers which the law invests in corporations; such powers are conferred by the legislature, the governor and attorney-general being mere instrumentalities by which the regularity of the application for incorporation is certified, but when certified the rights of the appellee, the corporation, are derived from the statute; in the present instance the rights of the appellee are derived from the provisions of the Code of 1892.

The legislature has provided a court for the determination of eminent domain proceedings. It has not expressly provided that it shall hear and determine the judicial question mentioned in section 17 of the constitution, but it has so provided by necessary implication because, without the power in some court to hear and determine that question, the constitution is infringed upon and the whole statutory eminent domain scheme must fall to the ground. If the provision in the code for the incorporation of railroads and the chapter therein on the subject of eminent domain be treated as a circumvention of section 17 of the constitution, they must fail and the constitution be upheld.

In short, the question in this case is whether section 17 of the constitution shall be given full force or whether the code provisions referred to are to be construed in such a way as to conflict with the constitution. The constitution and the statutes can both stand and be harmonized, on the idea that the court created by the legislature for the determination of eminent domain proceedings has the power to determine judicial questions arising in the progress of such proceedings. The question which the constitution makes a judicial one arises only in such proceedings. Why contend that it cannot be decided in the eminent domain court? There can be no trouble in construing the statutes so as to render it constitutional and save the property owner's constitutional right.

Early in the history of New York a statute was passed by the legislature which declared that the question whether a proposed

highway·was a necessity should be a judicial one.   The validity
of the statute was assailed, but its constitutionality was main-
tained by the court of New York, and speaking· of this statute, it
was said by the court *In re New York Central Railroad Co.,* 66
N. Y., 407 : "This necessity is therefore made a judicial ques-
tion, and when controverted it is obvious that the facts must in
some form be laid before the court to enable it to decide."

The courts of New York have uniformly held that the statute,
making the question of the necessity of the condemnation of land
for a public road. a judicial one committed to the tribunal having
jurisdiction in the matter of the laying out of roads the deter-
mination of that judicial question, and all of them sanction the
proposition that the necessity for opening a highway was by the
statute committed to the decision of a judicial tribunal.

Our constitution makes the question of the use a judicial ques-
tion.   The New York statute made the necessity a judicial ques-
tion.   New York decisions all hold that the question of the
necessity under the statute could be litigated in the condemna-
tion proceeding *or upon appeal therefrom.*   Why cannot the
question of the use be litigated in Mississippi under our consti-
tution in the condemnation proceeding or in the circuit court·
upon our *de novo appeal?*

The fourteenth·amendment to the constitution of the United
States provides that no state shall make or enforce any law
which shall deprive any person of life, liberty or property with-·
out due process of law, and our state constitution (constitution
1890), sec. 14, provides that no person shall be deprived of life,
liberty or property except by due process of law.

The federal courts have generally held that all eminent domain
proceedings, wherein the pleadings are properly. framed, present
a federal question, and that the supreme court of the United
States will inquire whether such proceeding deprives the defend-
ant of property without due process of law.   *Davidson* v. *New
Orleans,* 96 U. S., 97 (especially the concurring opinion of

Justice BRADLEY). The essentials of due process of law in eminent domain proceedings must exist. Notice must be given to the party whose property is sought to be taken. There must be an impartial tribunal of *competent jurisdiction,* and there must be a regular, orderly and uniform method of procedure for the determination of the questions involved, with an opportunity to be heard on the part of the land owner. See also 2 Abbott's Municipal Corporations, sec. 748. It will be observed that the tribunal must be one of competent jurisdiction, that the procedure must be adapted to the determination of the questions involved, and that the land owner must have opportunity to be heard.

This is true, generally speaking, but under our constitution it is inescapably true. If it be decided by this court that an eminent domain court under the code chapter on that subject, and the circuit court upon an appeal therefrom, are both without authority to hear and determine the question as to whether the proposed use were or were not a public use, then the decision will strike down as violating the constitution the entire chapter on the subject, and appellee's case must fall with it. Every true rule of statutory construction, however, requires that a statute should be construed so as to maintain its constitutionality where it can be done without violating its terms. The construction we contend for is not only the correct construction according to the terms of the statute, but the imperative construction demanded by the fundamental law of the land and under it the judgment appealed from must be reversed.

Speaking of procedure in eminent domain proceedings we are told that the better practice is for defendants to present their defenses in the form of pleas. Lewis on Eminent Domain, secs. 389, 390, 391.

The fact that railroads were declared by the constitution of Colorado to be public highways did not prevent the raising of the question as to the character of a railroad in a proceeding by

it to condemn land, another section of that constitution providing that "whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public." *Denver, etc., Coal Co.* v. *Union, etc., Ry. Co.,* 34 Fed. Rep., 386. Our constitution, section 180, provides that "all railroads *which carry persons or property for hire* shall be public highways," its terms being much narrower in this regard than the Colorado constitution, although they are nearly identical in language on the subject of the taking of private property for public use.

In *Cape Girardeau* v. *Houck* (Mo.), 31 S. W. Rep., 933, it was held, under a constitution like ours, that the question of use was a judicial one to be determined by the court, but that it could be determined from the record before the court that the use there in question was a public one, thus recognizing the right of defendants to make the record show the facts, and, if the facts justified the conclusion, as they do in this case now before the court, the pleas being undenied, to demand a finding to the effect that the use sought is private and therefore an unlawful one.

The Illinois case, *Chicago & Eastern R. R. Co.* v. *Wiltze,* 24 Am. & Eng. R. Cas. (Old Series), 261, and the West Virginia case, *Pittsburgh, Wheeling, etc., R. Co.* v. *Benwood Iron Works,* 36 Am. & Eng. R. Cas. (Old Series), 531, were cases in which regular railroads sought to condemn lands for the purpose of constructing thereon spur tracks or sidetracks to manufacturing plants. In each case it was held that the use was not public and the defense was made in the condemnation proceeding itself.

The case, *In re Niagara Falls & Whirlpool R. Co.* (N. Y. Court of Appeals, 1888), 33 Am. & Eng. R. Cas. (Old Series), 99, is perhaps the most interesting of them all. There the railroad company which sought to condemn land was chartered under the general railroad law of the state, as is the appellee in

this case. Its real purpose, however, as shown in the condemnation proceedings, was not to construct a public railroad for the transportation of passengers and freight between given termini, but the sole object of the construction of its railroad was to enable the corporation, for a compensation to be received, to provide for that portion of the public who might visit Niagara Falls better opportunities of seeing the natural attractions of the locality, etc.

The court of appeals of New York, in passing upon the case, said, among other things: "The particular corporation which claims the right to exercise the power (eminent domain) must be able to show a legislative warrant, and, that being shown, *it must be able, further, to establish, if the right be challenged, that the particular scheme in which it is engaged is a railroad enterprise, within the true meaning of the decisions which justify the taking of private property for railroad purposes; or that the business which it is organized to carry on is public; and that the taking of private property for the use of the corporation is a taking for public use, etc."*

And further on in the decision we read: "The right of the company being challenged on this ground (that the proposed use was not a public one), the court is compelled to consider it and it is manifest that the inquiry is not precluded because the petitioner has organized itself under the general railroad act, and has assumed in its articles of association the character of an ordinary railroad corporation."

The court concluded that the exhibition of the natural wonders of Niagara Falls to that part of the public who may go there is not such a public use as would justify the condemnation of private property to be used in so doing, although the party seeking the condemnation was duly incorporated as a railroad company and carried on its business by the use of railroad tracks. According to this splendid decision private property can be condemned only for a railroad (no matter what may be in its paper

charter) which is a public one, which intends to carry and is bound to carry when constructed, freight and passengers for hire, and this is the true doctrine.    Other railroads cannot condemn.    An act of the legislature authorizing lands to be taken for a certain purpose is in effect a declaration that the use is public, but the legislature has no power to declare conclusively that a use is public.    Of the many decisions to this effect the following abundantly establish the proposition:

ILLINOIS—*Chicago, etc., R. Co.* v. *Wiltse,* 116 Ill., 449 (24 Am. & Eng. R. Cas., 261).

INDIANA—*Great Western Natural Gas, etc., Co.* v. *Hawkins,* 30 Ind. App., 557.

IOWA—*Bankhead* v. *Brown,* 25 Iowa, 540.

KANSAS—*Lake Koen Nav., etc., Co.* v. *Klein,* 63 Kan., 484.

KENTUCKY—*Tracy* v. *Elizabethtown, etc., R. Co.,* 80 Ky., 259 (14 Am. & Eng. R. Cas., 407).

LOUISIANA—*Williams* v. *Judge,* 45 La. Ann., 1295; *New Orleans, etc., Co.* v. *Teller,* 113 La. Ann., 733.

MINNESOTA—*Matter of St. Paul, etc., R. Co.,* 34 Minn., 227 (22 Am. & Eng. R. Cas., 94).

MISSOURI—*St. Joseph Terminal R. Co.* v. *Hannibal, etc., R. Co.,* 94 Mo., 535; *Cape Girardeau* v. *Houck,* 129 Mo., 607.

NEW HAMPSHIRE—*Concord R. Co.* v. *Greely,* 17 N. H., 47.

NEW JERSEY—*Olmsted* v. *Morris Aqueduct,* 47 N. J. L., 311; *Coster* v. *Tide Water Co.,* 18 N. J. Eq., 54.

NEW YORK—*Pocantico Water Works Co.* v. *Bird,* 130 N. Y., 249; *Matter of Niagara Falls, etc., Co.,* 108 N. Y., 375 (33 Am. & Eng. R. Cas., 99, affirming 46 Hun. [N. Y.], 94).

NORTH CAROLINA—*Call* v. *Wilkesboro,* 115 N. Car., 337.

OREGON—*Apex Transp. Co.* v. *Garbade,* 32 Oregon, 582.

WEST VIRGINIA—*Pittsburg, etc., R. Co.* v. *Benwood Iron Works,* 31 W. Va., 710 (36 Am. & Eng. R. Cas., 531); *Norfolk, etc., R. Co.* v. *Nighbert,* 46 W. Va., 202.

VERMONT—*Tyler* v. *Beacher,* 44 Vt., 648.

"These cases recognize the right of the landowner to raise the question of the character of the intended use and have the courts pass upon it."

Several of the cases cited are specially worthy of note. *Tracy v. Elizabethtown, etc., R. Co.,* 80 Ky., 259, as reported in 14 Am. & Eng. R. Cas. (Old Series), 407, has appended to it a note wherein we read; "Missouri has left nothing in doubt by inserting in her constitution the following (the very words of our constitution) : 'Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public.' "

The case of *Bridevale Lumbering Co.* v. *Johnson,* 30 Oregon, 205 (s.c., 60 Am. St. Rep., 818), is instructive. In many respects it is like the case at bar; there as here the party seeking to condemn was regularly chartered as a railroad. It, however, met the issues of fact and the court of original jurisdiction found in its favor. The supreme court said: "The findings of the court show that the enterprise in which the plaintiff is engaged, and for which it requires the land in question, is of such character (that is to say, a public way), and therefore we have no alternative but to affirm the judgment. In doing so, however, we do not desire to be understood as holding that a railroad constructed by a mill company for the evident purpose of transporting logs to its mill can become a public highway, so as to justify the exercise of the power of eminent domain in its behalf, because of any declaration in its articles of incorporation to that effect or on account of any right of the public to use it for the transportation of freight and passengers."

*S. R. Prince,* and *Witherspoon & Witherspoon,* for appellee.

The vice of the argument of opposing counsel lies in assuming that the lower court did not determine the judicial question which they insist is involved in the case. The court did not

determine the identical question, and held that the pleas did not state any facts which show that the use to which this property is to be put is a private use. The truth is that these pleas and the other pleas of the defendant which assert that we are endeavoring to condemn a right of way for a private use utterly fail to state any facts showing that the use to which the property is to be put is a private one. It certainly is not sufficient for a plea to indulge in mere names and words, and it certainly is necessary that the pleas in order to be good should aver certain facts, which facts would show that the use to which this property is put is a private use.

The petition states clearly that this thirty-foot right of way is to be used for the purpose of constructing a railroad thereon, and that the railroad will be operated for the transportation of property for hire. There is absolutely no denial of this in any one of the pleas. There is no averment in any of them that if this thirty-foot right of way is condemned by the court that the appellee will not, as stated in its petition, proceed to construct a railroad thereon. On the other hand, some of the pleas aver expressly that if this right of way is condemned, the appellee will build a railroad thereon, and that after using said railroad for a while the appellee will then remove it. The position of the appellant, therefore, as shown by its pleas, is not that this right of way will not be used for the purpose of constructing a road thereon, and we submit that such an averment is absolutely indispensable to any good plea to this action.

If the pleas had averred that it was not the intention of the petitioner to construct a railroad on this right of way, and that its purpose after condemning the right of way and after getting possession thereof was to use it for some other purpose than for the construction of a road thereof; in other words, if the plea had averred that the appellee intended to use the right of way for agricultural or horticultural purposes, or that it intended to

use it for a fish pond, or merely for the purpose of removing the timber thereon, or merely for the purpose of taking up the poles that now make it a pole road, or, in short, if the pleas had averred that the purpose of the appellee was to use this property for any other purpose than the construction of a railroad thereon, then the court would—if, appellant's contention on the law of the case be correct—have been compelled to hear the evidence in support of such a plea, and to have inquired judicially into the question whether the use to which the property was to be put was the public use set out in the petition and charter, or whether it was the private use set out in the plea. But none of the pleas aver any private use to which this property will be put, and wherever they state and admit to what purposes it is to be put, they clearly concede that it is to be used for the purpose of constructing a road thereon.

Therefore, in sustaining the demurrer to the plea, the court judicially determined that the pleas failed to show that this property was to be put to any private use and hence the pleas presented no defense.

The real meaning of the defendant's pleas, and the real position which the defendant intended to assume in its pleas, which are so inartistically and poorly expressed, is not that the appellee did not in good faith intend to construct a railroad on this right of way, but that after the railroad is constructed the incorporators intend not to operate and use the road as a common carrier, and not to accept property to be transported for hire, but that the incorporators intend to use and operate the road, when constructed, for the sole purpose of carrying the logs and timber of the appellee and of M. L. Davis. If this be the private and secret purpose of the incorporators of the appellee, then we say that that secret purpose and intention of the appellee, is immaterial. If the incorporators of the appellee are actuated by any such secret intention and purpose, then it merely amounts to this, that after the road is con-

structed they do not intend that the company will discharge its duties as a common carrier. We assert that this is immaterial, because when the road is constructed and completed it will be under a charter granted by the state of Mississippi. That charter is a contract between the state and the corporation. It imposes upon the corporation the duty and obligation to receive and transport property for hire, and any citizen of the state will have a legal right, when the road is constructed and completed, to force the corporation to accept and transport freight for hire.

The purpose, intention or design of the incorporators cannot affect the validity of a charter. We quote from the case of *National Docks R. R.* v. *Central R. R. Co.,* 32 N. J. Eq., 755, at p. 765:

"But it is next insisted by the complainants that the road which the National Docks Railway Company intends to construct will be a private and not a public one, and to establish this they adduce the purposes of the corporators. But I think these purposes are foreign to the inquiry. The character of the road, in this respect, is dependent, not on the designs of its projectors, but on the terms of the law which governs it. Said Judge BALDWIN in *Bonaparte* v. *C. & A. R. R. Co.,* Bald. C. C., 205: 'A road or canal constructed by the public or a corporation is a public highway for the public benefit, if the public have a right of passage thereon by paying a reasonable, stipulated, uniform toll.' Tested by this criterion, and it is a true one, there can be no doubt that every railroad built by a corporation organized under our general law, becomes *ipso facto* a public road."

The inducing motive to form the corporation is not determinative of anything:

"The question of the number of persons who will in fact use the road is comparatively immaterial. The controlling factor is the right of the public to the use, and the fact that the road is

primarily for the accommodation of a single family has been held not to affect its character as a public highway." 10 Am. & Eng. Ency. Law (2d ed.), 1074.

The test is not the secret purpose and intention of the incorporators as a common carrier, but the test is as to the legal right of the public to require and force the corporation to accept and transport persons or property for hire. If, under the constitution and laws of Mississippi, when this road is constructed the legislature and people will have a legal right to force the corporation to transport property for hire, and if any citizen will have the right then to go into courts and force the company to discharge its duties as a common carrier and to accept and transport property for hire, then the company had the right, corresponding to that obligation, to secure by condemnation proceedings the right of way which will enable it to construct the road.

The fifth plea avers that the appellee is a private log road company, and that it is owned by M. L. Davis, who owns ninety-eight per cent of the stock in said corporation, and that one share belongs to R. C. Davis, and one share to J. W. Whiting. This plea differs from the first plea, in that the first alleged that the appellee was a road, but this one alleges that it is a private log road company. The object of this averment is to assail the charter of the appellant. The charter shows that it is a railroad company, organized for the purpose of constructing and operating a railroad, and if it is not in truth and in fact what its charter makes it, then we say that the only way to reach the matter is by *quo warranto* on the part of the state, and that the character of the company as organized and chartered cannot be inquired into in a collateral proceeding like this.

The plea further avers that the property of the company consists of a narrow-gauge log road, used for transporting the logs and timber products from the lands of Davis in Alabama to Oak Grove, Mississippi, to the mill of Davis at Oak Grove.

This averment of the plea is immaterial. It must necessarily refer to the twenty-five miles of railroad constructed in Alabama from Oak Grove to the Mississippi line, and it is utterly immaterial for what purpose the road is now being used. This court is only concerned with the Mississippi corporation, and with the road which the company proposes to build and operate in Mississippi. That road has just been begun, and only one mile of it completed. If the averment of the plea that the property of the company is a narrow-guage road used for transporting the logs of Davis, refers to this one mile of constructed road, then we say that it is no defense to this suit.

All railroads in the beginning of their construction are used for private purposes. When one mile of railroad is completed that constructed mile is used by the company for hauling gravel, logs and all other material along the road for the purpose of completing and constructing it, and it is utterly immaterial to what uses a small part of a constructed road is put when we come to determine whether the company has the legal right to continue the construction of the road and to complete it to a point where it can be used and operated as a common carrier and as a public highway.

The sixth, seventh and eighth pleas aver that the appellee was not organized for the purpose of carrying passengers or property for hire, and that the condemnation of the right of way is not for the purpose of constructing and operating a railroad for conveying passengers or property for hire, and that the lateral lines are not sought to be constructed for the purpose of operating a railroad for carrying passengers or property for hire.

These three pleas were demurred to because they do not deny that the appellee was legally incorporated, and because said pleas are a collateral attack upon the organization of the petitioner, and because the averments of the pleas are an incorrect conclusion of law, and because the purpose of the organization, as alleged, does not affect the right of eminent domain.

The right of the defendant to interpose these pleas and to invoke an investigation into the purposes of appellee's organization, seems to be based on section 17 of the constitution. There is not a syllable in section 17 of the constitution which authorizes the court, where condemnation proceedings are instituted for the purpose of condemning private property to a particular and designated use, upon a plea, to determine that the use to which the property is to be put is not the contemplated one, is not the one sought by the petition, but that the use is an entirely different one from that intended in the petition, and in the charter of incorporation of the petitioner.

If sec. 17 had that meaning, and intended to open up any such inquiries as that, it would be the same thing as conferring upon the court of eminent domain not only the right to condemn private property to public use, but to try all *quo warranto* cases where the object was to show that the purposes and objects of the organization of the corporation were entirely different from those stated in the articles of incorporation. Such was manifestly not the purpose of sec. 17 of the constitution. It had happened very frequently that the legislature had declared that private property might be taken for certain uses, and had declared that such uses should be regarded as public, and the whole object of sec. 17 was to take away from the legislature the right to declare whether a given use was public or private, and to confer the right to so determine upon the court as a judicial question.

Argued orally by *R. H. Thompson,* for appellant, and by *S. R. Prince,* and *S. A. Witherspoon,* for appellee.

MAYES, J., delivered the opinion of the court.

On the 4th day of August, 1904, M. L. Davis, B. C. Davis and J. W. Whiting made application to the governor of the state to procure a charter for a proposed railroad corporation, to be incorporated under the name of the Oak Grove & George-

town Railroad Company. This company, as shown by the petition seeking a charter in this state, had already been incorporated under the laws of the state of Alabama under the same name and by the same incorporators. A charter was duly granted, and recorded in the office of the secretary of state on the 12th day of November, 1904. The granting of the charter conforms in all respects to the requirements of the law upon this subject. By the charter authority is granted to construct, acquire, own, maintain and operate a railroad, with such branches, spurs and laterals thereto as may be necessary, and to have, hold, enjoy, possess and exercise any and all the rights, powers, privileges and franchises conferred upon railroad corporations by any act or law of the state of Mississippi. It is shown by the charter that it is proposed to construct and operate a railroad in this state from a point where the rails of the Alabama corporation come into the state of Mississippi, in Greene county, in a northwesterly direction to the town of Leakesville, Miss.; the terminal points of said railroad being Oak Grove, in Mobile county, Ala., and Leakesville, in Greene county, Miss.

After this charter was procured, and acting under it, the Oak Grove & Georgetown Railroad Company filed a petition against the Vinegar Bend Lumber Company and others, seeking to condemn, for right of way purposes, certain lands belonging to the Vinegar Bend Lumber Company and the other defendants named in the petition, in which it alleges that it has the right to condemn a right of way across the lands belonging to the Vinegar Bend Lumber Company and the other defendants. It further alleges the procurement of the charter, as above set out, as a railroad company, under which it has the right to construct, acquire, own, maintain and operate a railroad in the state of Mississippi between the points described in its charter, and also allege that it has the right to exercise all the rights, powers, privileges and franchises conferred upon

railroad corporations by any act or law of the state of Mississippi, and hence has the right to condemn the lands sought to be condemned in this proceeding. The petition further alleges that the object of the condemnation proceeding is to obtain the land for a public use, and that public use is for the purpose of placing on it the main line of the railroad, and, further, for laterals and branches to the road, and that it is necessary to have this right of way to complete the road and carry out the purpose of its organization and development of the country adjacent to its line. In due course of time the eminent domain court was organized and this petition came on for hearing. At the hearing the defendants undertook to file certain pleas in the eminent domain court. These pleas offered the defense that the use for which this property was to be taken was not a public use, but the purpose of the taking was for private use. The pleas further allege that the Oak Grove & Georgetown Railroad Company is not a common carrier, but a private, narrow-gauge, logging road, operated for private gain, and that it is merely using this charter as a subterfuge and a mask under which it is seeking to condemn the lands and obtain rights of way, not for the purpose of constructing a genuine railroad, but merely for the private purpose of enabling it, under the powers granted under this charter, to condemn for private purposes these lands, to the end that it may obtain rights of way in order to reach certain timber owned by it along the line of the lands proposed to be condemned; the only object of the road being to enable the petitioner to construct its log road and laterals across these lands for its own private purposes in removing timber which belongs to it, without any purpose ever to become a common carrier, intending to abandon and remove the road and laterals as soon as they served the purpose of enabling the petitioner to remove its timber. The eminent domain court refused to allow this defense to be made under the pleas, and the case was appealed to the circuit court, and the defense, as

shown by these pleas, again offered demurrers filed thereto by the petitioners, and the demurrers sustained by the circuit judge, whereupon a verdict was rendered by the jury, assessing damage. From this action of the circuit judge an appeal is prosecuted here by the Vinegar Bend Lumber Company and others.

There are numberous assignments of error, the main one being that the court below erred in sustaining the demurrer of appellee to its ten several pleas, and to each of them. We deem it necessary to notice only this assignment, since it is agreed that there is no complaint as to the sufficiency of the compensation allowed by the jury, and the decision on this assignment of error disposes of the case. The sole question presented in this case is: Where an association of persons have procured a charter which entitles them to exercise the right of eminent domain on its face, and the party whose property is sought to be taken desires to challenge their right to take on the ground that while, under the charter, they purport to be engaged in such public enterprise as would entitle them to exercise the right of eminent domain, yet in truth and in fact they are not engaged in a public business and have no right to take the property, because they are seeking to take property under the cloak of their charter for private purposes, can this defense be made where the charter authorizes the taking, and can it be made in the tribunal organized for the purpose of condemning the land for the alleged public use?

Section 17 of the constitution of the state provides that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is pub-

lic." Section 184 of the constitution provides: "All railroads which carry persons or property for hire shall be public highways, and all railroad companies so engaged shall be common carriers. Any company organized for that purpose under the laws of the state shall have the right to construct and operate a railroad between any points within this state, and to connect at the state line with roads of other states." By these two sections of the constitution it is seen, first, that private property can only be taken or damaged for public use in a manner to be prescribed by law; second, that, when an attempt is made to take private property for a use alleged to be public, the question shall be a judicial question, and as such determined without regard to legislative assertion that the use is public; third, that only railroads which carry persons or property for hire shall be considered public highways and common carriers; and, fourth, companies organized for this purpose shall have the right to construct and operate railroads. The pleas filed in this case challenge the use for which the property was intended to be taken, and challenge the right of the Oak Grove & Georgetown Railroad Company to take property, because they allege that the property was not intended for public use, but intended for private use solely. The pleas further challenge the fact that the railroad contemplated to be built by the Oak Grove & Georgetown Railroad Company was a railroad within the meaning of sec. 184 of the constitution of the state, and therefore for this further reason it had no right to take this property. The pleas further set up the defense that the procurement of the charter was for fraudulent purposes, and that the Oak Grove & Georgetown Railroad Company was masquerading under its charter, pretending to have the right to condemn property for public use, when, as a matter of fact, it was merely using this charter for the purpose of obtaining private property for private uses, and through this charter perpetrating a fraud.

Since it is provided in the constitution that private property can only be taken for public uses, whenever and by whatever means it may be attempted to take private property for a use not public, the citizen finds his protection against this infringement of his rights in the organic law of the state. In sec. 90 of the constitution it is provided in paragraph "r" that "the legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws." In this section, among many other subjects enumerated in paragraph "r," the constitution prohibits "conferring power to exercise the right of eminent domain in any other manner than that prescribed by general law." This clause of the constitution of 1890 was adopted for the purpose of having a fixed procedure on the subject of eminent domain, under which the legislature of the state formulated the method for the exercise of the right as found in chapter 40 of the code of 1892. Turning now to the chapter of the code of 1892 on this subject, sec. 1679 provides that "any person or corporation having the right to condemn private property for public use shall exercise that right as provided in this chapter," etc. It will be seen by the first section that this chapter presupposes that the right to condemn exists, and that its provisions can be availed of only by such persons or corporations as have the right. Even when there is a right to condemn, the right to take is not to be determined by an inspection of the charter alone, but by the actual uses for which the property is to be used. The charter may confer upon the person or corporation the right to condemn, but it cannot determine the right to take under the charter. The right to take private property is a judicial question, made so by the constitution, and no form of charter, or powers granted in the charter, can take the settlement of this question away from the courts. The right to condemn and take is dependent upon two things: First, a provision in the charter authorizing it; and, second,

that the right will be exercised for only such purposes as .the constitution allows private property to be taken, to-wit: for public purposes.

Section 1680, Code 1892, provides for the creation of a special court of eminent domain to exercise the jurisdiction and powers enumerated in the chapter. Section 1681 provides how the court shall be organized. Section 1686 provides that, "where the application seeks to condemn the property of more than one defendant interested in different property, a separate trial shall be had for each; and the court may set the trial of any one or more of the issues for a time and place to be fixed by order of the court, and the parties and jury shall be compelled to attend accordingly." On a review of the whole chapter on the subject of eminent domain, we unhesitatingly arrive at the conclusion that the legislature never intended to create a tribunal of full jurisdiction to try any and all issues that might be raised on the subject of the right to condemn. The court created by this chapter is a special court, created for a special purpose, having an exceedingly limited jurisdiction, exercising no judicial functions, and clothed with the power to try the only issue that is confided to it by the statute; and that issue is, singly and solely, to fix the compensation which shall be paid to the landowner for his land. In truth, sec. 1680 declares that it is a special court. The chapter itself presupposes that the right to condemn property exists, and there is no provision made in the whole chapter on this subject giving to the eminent domain court the power to adjudicate the issue as to whether or not the right to exercise the power of eminent domain does or does not exist. The sole and only power conferred by this chapter, from its first section to its last, is the right, and the right only, to ascertain and fix compensation for the taking of the land where the right to do so exists. If this right is to be challenged while it is a judicial question, it must be challenged in a different way. This way must be determined in the light

of the fixed and settled procedure in this state. We can trace the way in which these questions have arisen and been settled in other states with little profit to ourselves as forming precedents for a decision in this case, except as the decisions announce general principles which may apply to the same. There is outlined in this chapter no procedure for the purpose of trying, in the eminent domain court, the question of whether or not the right to condemn does or does not exist in the particular person or corporation applying for the proceeding. In sec. 1686 it is provided that, when more than one defendant is interested in different property, separate trials shall be had for each, and the court may set the trial of any one or more of the issues; but the issues here spoken of clearly contemplate the only issue that can be made under this chapter in the eminent domain court, and that is the issue as to value. In sec. 1694 the code provides that "after the trial of the first issue, if there be others undisposed of they shall be tried one at a time," etc. This section must be construed with sec. 1686, and the issues here spoken of are the issues which are provided to be raised under sec. 1686 of the code. As further throwing light upon the construction which we place upon this chapter of the code, it will be seen that sec. 1690 provides the instruction which shall be given by the justice to the jury. This instruction is addressed solely to the question of the damage for the taking of the property. In sec. 1691 is provided a form of a verdict for the jury, and it provides alone for the finding of damage by the jury. Section 1692 provides for the judgment which shall be entered. And this form provides only for the entering of a judgment describing the property sought to be condemned, which, of course, is necessary to show what was condemned in the proceeding, and further provides that there shall be entered up the amount of compensation due as damage.

It will thus be seen, upon review of this entire chapter, that its whole theory is that the one question, and the only question,

which can be raised in the eminent domain court, and the only jurisdiction confided to it, is the jurisdiction to ascertain the amount of damage sustained by the party whose lands are sought to be taken. The correctness of our conclusion becomes more apparent on examining Code 1906, ch. 43, on the subject of eminent domain, wherein the legislature, as if emphasizing the fact that the only question it was the purpose of the legislature to commit to the court of eminent domain, provides in sec. 1862 of the code of 1906 that "the justice of the peace shall not for any cause quash the proceedings or dismiss the court of eminent domain, but must proceed with the condemnation." It will be seen from this section that though the constitution provides that property shall be taken for public use only, and the question shall be a judicial question, yet this clause of the statute absolutely prohibits the justice of the peace from quashing or dismissing the proceedings for any cause whatever. If the defense offered by the pleas can be made before the eminent domain court, and the eminent domain court finds that the facts offered to be set up by the pleas are true, it must necessarily have resulted in the dismissal of the proceedings, and yet this section of the statute prohibits the eminent domain court from doing this.

The pleas squarely set up a denial of the constitutional right of the petitioners to take this property. They were offered in the tribunal designated by the legislature to try the condemnation proceedings, and yet the statute under which these proceedings must hereafter be instituted forbid that tribunal from dismissing or quashing the eminent domain court for any purpose. The constitution of the state has provided that the trial of this question shall be a judicial one; and yet, when the defendants undertake to try this question in the court of eminent domain, the statute forbids that court from permitting this defense to become effective. If it be impossible to raise the issue as to the right to take the land in the court in which the

proceedings originated, and in which the only issue warranted
to be made by the pleadings in that court is one of compensation,
a new issue, involving a new question and new pleadings, can-
not be raised in the appellate tribunal; that is to say, in the
circuit court. As was said in the case of *Georgia, C. & N. Ry.
Co.* v. *Ridlehuber et al.,* 17 S. E. Rep., 24, (38 S. C., 308), so
we say in this case, after a careful review of the entire law in this
state upon the subject of the eminent domain court and the con-
stitutional provisions in reference to same: "It is scarcely possi-
ble to suppose that the legislature ever intended that the jury im-
paneled under the provisions of these sections should be in-
vested with the power to decide the question of the right to
compensation, which might, and properly would, in the present
case, involve the construction of nice legal points upon which
they could not receive any proper instructions, as there is no
provision that their deliberations shall be presided over or
directed by a judicial officer. It would be in utter disregard of
the just conceptions of the nature and office of an appeal to
hold that the questions which were not, and could not be, con-
sidered by the tribunal from which the appeal is taken, could
be raised for the first time in the appellate tribunal. We can-
not, therefore, give such a construction to the statute as would
utterly disregard well-settled principles of law. On the con-
trary, we must suppose that the intention of the legislature
was to do no more than what they have plainly said—submit
the question of the amount of compensation to the jury, leaving
the question of the right to compensation to be determined in
some more appropriate form."

In the case of *Mountain Park Terminal Co.* v. *Field et al.,*
88 S. W. Rep., 897 (76 Ark., 239), in that part of the opinion
to be found on p. 989 of 88 S. W. Rep., and p. 244 of 76 Ark.,
the court said: "The proceeding under our statute is a special
one, directed solely to the object of determining the compensation
to be paid the owner of property proposed to be taken. No pro-.

vision is made for any issue upon the right to condemn. It could
not there be proved that the junction company was not a corpora-
tion. To attack its existence collaterally is not permissible. A
plea in the nature of *nul tiel* corporation would not be safe, in
the face of complete articles of association. Besides, it is plain
that the legislature never contemplated any such defense as
a want of right to condemn in the corporation." So, in this
case, the legislature of the state of Mississippi never contem-
plated, in the enactment of this chapter and in making provision
for the establishment of the special domain court, that any
such defense as a want of right to take in the person or corpora-
tion seeking condemnation could be made in the eminent domain
court. If it did, it would necessarily result in making sec.
1862 of the code of 1906, providing that "the justice of the
peace shall not for any cause quash the proceedings or dismiss
the court of eminent domain, but must proceed with the con-
demnation," conflict with sec. 17 of the constitution, which
provides that private property shall not be taken for public
use, and making the question of whether or not the use is public
a judicial question, in that if all issues are to be tried by the
eminent domain court, and the legislature prohibits that court
from trying that issue, which stands at the threshhold of the
right of the corporation to take the property, this section would
deny both the constitutional right to show that the use was not
public, and the further right to have this question judicially
ascertained.

We can give the statutes relating to eminent domain no such
interpretation. The eminent domain court has no concern with
the question of whether or not the right to take exists. It is not
necessary for the person whose land is sought to be taken under
the eminent domain chapter to attend the trial in the condemna-
tion proceedings, or make any defense in the eminent domain
court, in order to enable him to resist the taking of his property,
if the taking be not for a public purpose. The judgment of the

eminent domain court, condemning his property and assessing damage thereof, can be pleaded against him as *res adjudicata* of the value of the land only, and cannot operate to estop him from questioning the purpose of the taking in another proceeding, if it be alleged that the taking is for a purpose not permissible under the constitution. He may litigate the right to take his property at any time before acceptance of the compensation, or before the waiver of his right to have the question of the use judicially determined. In the case of *Lake Koen Navigation, Reservoir & Irrigation Co.* v. *Klein,* 65 Pac., 685, (63 Kan., 484), in that part of the opinion to be found on p. 688 of 65 Pac., and p. 497 of 63 Kan., citing numerous authorities, it is stated that, in determining whether the proposed use was public or private, courts are not confined to the description of the objects and purposes of the corporation set forth in its articles of incorporation, but may resort to evidence *aliunde* showing the actual business proposed to be conducted by it; citing *Lumber Co.* v. *Johnson,* 30 Or. 205, (46 Pac., 790; 34 L. R. A., 368; 60 Am. St. Rep., 818, and *In re* Niagara Falls & W. Ry. Co., 108, N. Y., 375; 15 N. E. Rep., 429). We quote from this authority and cite it, but by the very terms of our constitution it is manifest that in determining whether the proposed use of property is public or private, the courts, by the constitution itself, are not confined to a description of the objects and purposes of the corporation set forth in its articles of incorporation, because the constitution says in sec. 17 that private property shall not be taken or damaged except for public use, and that the question whether the contemplated use be public shall be a judicial question, and as such determined without regard to legislative assertion that the use is public.

If the courts in this state could not inquire as to whether a contemplated use by a corporation was or was not a public use, when the recitals in the face of the charter created a cor-

poration of the kind authorized by our law to exercise the right
of eminent domain, the mere recital in the charter that the
purpose of the corporation as set forth in its articles of incor-
poration was to engage in a public business would be to ob-
literate this section of the constitution. As was said in the
case of *Mountain Park Terminal Ry. C.* v. *Field et al.,* 88 S.
W. Rep., 897, (76 Ark., 239), in that part of the opinion to be
found on p. 899 of 88 S. W. Rep., and p. 244 of 76 Ark.: "Cor-
porations not acting under special charters or legislative grant,
but collaterally organized under general laws, although their
existence as corporations cannot be questioned collaterally, yet
if they have resulted from fraudulent combinations of indi-
viduals to procure powers under circumstances and for pur-
poses not within the scope and purpose of legislative intent,
and the corporators, under shelter of their articles, are about
to exercise powers oppressive to the individual, they may be
restrained by private suit by those injured, or about to be.
Fraud has no immunity anywhere, in any guise. Individuals
cannot combine as a railroad corporation to convert property
of individuals solely and exclusively to their private use. That
would be an abuse of the power to form such corporations
under the statutes, and contrary to their spirit and intent, and
may be restrained by private suit by those injured or about
to be." If any person or corporation, procuring a charter
which would be a warrant on the face of it to condemn private
property for public use, in truth and in fact condemned under
the cloak of this charter for private purposes, the allotment
of damage by the eminent domain court can afford such person
or corporation no protection, so long as the party whose land is
taken has not acquiesced, either by acceptance of the compensa-
tion allowed by the eminent domain court or in some other
manner waived his right. The person or corporation using
its charter as a masquerade with which to obtain private
property for private uses may be enjoined from the taking

of the property after the jury have condemned it and fixed
the compensation, so long as there has been no acquiescence
or waiver by the owner.    In other words, the judgment of the
eminent domain court in a proceeding to condemn on a charter
that is perfectly valid can never estop the landowner from deny-
ing the right of the corporation to take his property until he has
in some way acquiesced in the same.    If there be fraud, no
immunity will be afforded by the charter or the judgment of the
eminent domain court, when the purposes are challenged,
the right denied, and the fraud unmasked.    No property can
be taken save for public use, either by a person or corporation
with or without charter.

When sec. 17 of the constitution provided that the right to
take private property for public use shall be a judicial question,
it meant to, and did, confine this question solely to the courts.
Neither the constitution nor the laws of the state provide any
particular tribunal in which this question shall be determined,
nor is it a matter of any particular concern in what court the
question shall be settled, provided it be determined in that
forum which is capable of deciding it.    It clearly cannot be
settled in the eminent domain court, and because no procedure
is pointed out either in the constitution or the statute, and, be-
cause of this inadequacy of a remedy, this question is neces-
sarily confided to the chancery court.    In the case of *Sullivan* v.
*Railway Co.,* 85 Miss., 649 (38 South. Rep., 33), Chief Jus-
tice WHITFIELD, delivering the opinion of the court, says: "We
do not think that a justice of the peace in eminent domain
proceedings has any judicial function to perform.    He acts
ministerially only.    Every step which he is to take is precisely
marked out by the statute.    The objection that he ought to be
permitted to decide whether he has jurisdiction, or judicially
to pass upon any other question, is more plausible than sound.
It results from the very nature of the case that the procedure
is summary, as, for example, no appeal is allowed, except

from the findings of the jury; and it is perfectly obvious that a *certiorari* could effect nothing in this sort of case. Formerly the sheriff organized this court. The justice of the peace is simply substituted for the sheriff." If the justice of the peace, in eminent domain proceedings, has no judicial function to perform, as was said in *Sullivan* v. *Railroad, supra,* and the question to be settled is a judicial question, it is manifest that it cannot have been judicially determined in any proceeding had before the eminent domain court; nor can the circuit court, on appeal, permit issues to be raised and tried which could not have been tried in the court in which the appeal originated, as we have shown by authorities cited above. Since neither the constitution nor the statutes provide a particular tribunal in which to try the question of whether or not the use for which private property is to be taken is a public or private use, and since it is made a judicial question by the constitution, when it is sought to try the question it must be by injunction, and in the chancery court, enjoining the entry upon or appropriation of the land, because the use for which land is sought to be taken is not a public use.

If it be argued that this remedy is complex, we answer by saying that its simplification rests with the legislature of the state, and not with the courts; but the constitution is not violated when there is a tribunal in which to try the question of the use to which the property is to be put. In no other forum, except the chancery court and by the method pointed out, is there any adequate remedy under the laws of this state, or, in fact, any remedy at all. In the case of *Welton* v. *Dickson,* 57 N. W. Rep., 559 (38 Neb., 767; 22 L. R. A., 496; 41 Am. St. Rep., 771), in that part of opinion to be found on p. 563 of 57 N. W. Rep., p. 782 of 38 Neb. and p. 501 of 22 L. R. A. (41 Am. St. Rep., 771), the court says: "The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a

particular case must depend altogether upon the character of the case as disclosed in the proceeding. It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." When this rule is applied to this case, it is seen that the case under discussion is stronger than the one put in the quotation above. In the case under discussion there is no remedy at law, and yet there is a constitutional right to be decided. What tribunal more qualified to establish a procedure in this case than a court of equity   As was said in the case of *Riley* v. *Charleston, etc., Co.,* 45 S. E. Rep., 149 (67 S. C., 84), in that part of the opinion to be found on p. 153 or 45 S. E. Rep. and p. 94 of 67 S. C.: "If the plaintiffs were compelled to look solely to the condemnation proceedings for relief, this would destroy their right to show that the condemnation proceedings could not be instituted, and that is the question in this case to be finally determined when it is heard." In support of the announcement of law in this case we are amply sustained by outside authority, even if we were dependent upon that. In the case of *Ham* v. *Levee Commissioners,* 83 Miss., 534 (35 South. Rep., 943), in that part of the opinion to be found on p. 555 of 83 Miss. and p. 947 of 35 South. Rep., Justice TRULY, delivering the opinion of the court, says: "Courts will interfere and review the exercise of the discretion of those to whom the power of eminent domain has been delegated by the legislative enactment only in exceptional cases, as when property is appropriated for private purposes under the guise of public use, or if the condemnation is sought for private gain," etc.

We think that the circuit court, and the eminent domain court did right in declining to hear the defense presented by the pleas offered by the defendants. It was not a defense which could be made in the tribunal in which the proceeding originated, nor was it a defense which could be raised after the

case was appealed to the circuit court. The sole issue in the case to be tried was one of compensation. That was the issue before the eminent domain court, and that was the sole issue which could be tried in the circuit court. Pomeroy's Eq. Rem., p. 466; Cyc. of Law., vol. 15, p. 988; *Gaw* v. *Bristol, etc., R. Co.,* 46 Atl., 372 (196 Pa., 442); *Chestatee, etc., Co.* v. *Cavender's Creek Co.,* 46 S. E. Rep., 422 (119 Ga., 354; 100 Am. St. Rep., 174); *Colby* v. *Village of La Grange (C. C.),* 65 Fed., 554; *Welton* v. *Dickson,* 57 N. W. Rep., 559 (38 Neb., 767; 22 L. R. A., 496; 41 Am. St. Rep., 771); *Riley* v. *Charleston Union Sta. Co.,* 45 S. E. Rep., 149 (67 S. C., 84); *South Carolina & G. R. Co.* v. *Am. Tel., etc., Co.,* 41 S. E. Rep., 307 (63 S. C., 199); *Georgia C. & N. Ry. Co.* v. *Ridlehuber,* 17 S. E. Rep., 24 (38 S. C., 308); *Mountain Park Co.* v. *Field,* 88 S. W. Rep., 897 (76 Ark., 239); *Lake Koen, etc., Co.* v. *Klein,* 55 Pac., 684 (63 Kan., 484). The holdings in this case in no way conflict with the holding of the court in the case of *Alabama & V. Ry. Co.* v. *Cumberland, etc., Co.,* 88 Miss., 438 (41 South. Rep., 258). The questions in the two cases are entirely distinct. In the case cited above the court said, on page 445 of 88 Miss., and page 259 of 41 South. Rep.: "The sole objection to the exercise of the right by the Mississippi Telegraph Company set up in the pleadings is that it was but a dummy for the Cumberland Telephone Company, had no capital stock, and was organized for the mere purpose of enabling the Cumberland Telephone Company to do indirectly what it could not directly do, and that its organization and incorporation were consequently unlawful; but whether the Mississippi Telegraph Company is a properly organized company under the laws of this state is a question between it and the state, not to be inquired into in this proceeding by the appellant." But in this case a wholly different question is presented, in that it is alleged that the use for which the property is undertaken to be taken, is a private use, and not a public one, and the

validity of the charter itself in such a case cannot affect the question, as we have shown above.                    *Affirmed.*

CALHOON, J., delivered the following dissenting opinion:

*Sullivan* v. *Railroad Co.,* 85 Miss., 660, (38 South. Rep., 33), on its facts continues to have my approval.  So do the cases holding that equity has jurisdiction.  It is also true, in my opinion, that the code chapter on eminent domain is constitutional on proper interpretation.  But, if the view of my brethren be correct, it is, as I think, violative of the organic law, and should be so held.  This chapter, in its first clause, gives the right to take the property *nolens volens,* only to those "having the right to condemn private property for public use."  Code 1892, § 1679.  Section 1681 provides for the organization of the special tribunal on the application of those "having the right so to do."  Section 17 of our constitution provides: "And whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public."  That is, without regard to legislative charters.  So it is a judicial question "whenever an attempt is made," whether the "contemplated use be public."  It is, therefore, a judicial question then and there.  I say the forum provided for has the right to determine before proceeding, two questions.  One is, does the petition state *prima facie* a right?  If so, then, on dispute, may be tried whether the mask of a charter has not been merely assumed to rob the citizen of his land for private, and not for public use.  If the forum created cannot do this, the act is unconstitutional.  The citizen cannot be compelled to go to the trouble and expense of starting a new proceeding to protect his own against land piracy under the form of law.

I dissent with diffidence, and might write a volume, but content myself with this syllabus.  If my position is unsound, the

legislature might constitutionally authorize corporations to take any land they wanted and use it until restrained by injunction. If the legislature has organized a tribunal without power to determine whether it has proper parties before it, it has acted without power in itself. I say it has not committed this error. I say it could not thus authorize the taking of the land of a citizen, and by brute force compel him to become the actor in a new and expensive proceeding requiring an injunction bond, all of which would be too much for the slender purses of many worthy people with rights.