WILLIAM C. SULLIVAN ET AL. *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

1. EMINENT DOMAIN.  *Special court.   Justice of the peace.    Code 1892, § 1680.   Mandamus.*

   In presiding over a special court of eminent domain, created by Code 1892, § 1680, the justice of the peace acts ministerially rather than judicially, and he may be controlled by mandamus.

2. SAME.   *Jurisdiction of circuit court.   Meeting of eminent domain court. Time and place.*

   The circuit court is, however, without power to fix tae time and place for the meeting of the eminent domain court, and in awarding mandamus it should simply command the justice of the peace to reconvene the special court and proceed according to law.

3. SAME.   *Former proceeding.   Res adjudicata.*

   A railroad company, having the right to condemn private property for public use, is not precluded from so doing by the fact that a former proceeding to condemn the same land had been. dismissed by the justice of the peace, and that a petition for mandamus to require the justice of the peace to proceed in the cause, filed in the name of the state on the relation of the attorney-general, for the railroad's benefit, had been dismissed on demurrer in the circuit court.

FROM the circuit court of, second district, Tallahatchie county.

HON. SAMUEL C. COOK, Judge.

The railroad company, appellee, was plaintiff, and Sullivan, a justice of the peace, and others, appellants, were defendants

there. The action was a mandamus proceeding, and from a judgment awarding the writ the defendants appealed to the supreme court.

In August, 1903, the Yazoo & Mississippi Valley Railroad Company filed with the clerk of the circuit court a written application for the condemnation of certain land in Tallahatchie county for public use. On this application a summons and writ was issued for the organization of a court of eminent domain. The justice of the peace and the jurors selected assembled on the day fixed in the writ, and the defendants, the property owners, appeared by counsel and demurred to the application and writ. The demurrer was sustained by the justice of the peace and the proceeding was dismissed. Afterwards the state of Mississippi, by its attorney-general, filed a petition in the circuit court, on his own relation, for the benefit of the Yazoo & Mississippi Valley Railroad Company, reciting the foregoing facts, and alleging that the action of the justice of the peace was illegal and improper, and praying for a writ of mandamus directed to the justice of the peace, Sullivan, to require him to proceed with the eminent domain court. To this petition Sullivan, the justice of the peace, demurred on the grounds, *inter alia,* that the petition was that of the state by its attorney-general, instead of being the petition of the Yazoo & Mississippi Valley Railroad Company, and that the matter of the condemnation of land for the use of the railroad company was not such a matter affecting the public interest as warranted a proceeding by the attorney-general. The circuit court sustained the demurrer, and the petition was dismissed, from which judgment an appeal was taken in behalf of the railroad company to the supreme court, but it was afterwards dismissed. In October, 1903, the Yazoo & Mississippi Valley Railroad Company filed its new or second written application with the clerk of the circuit court of Tallahatchie county, where the land was located, asking for the issuance of a writ and summons for the organization of an eminent domain court to condemn

the same lands. The writ ·was issued by the clerk, directed to Sullivan, justice of the peace of the district where the land was located, requiring the service of summons on the jurors who had been drawn. On the proper day the court was organized, and the defendants, the landowners, appeared by counsel and filed·several pleas, one of which was *res adjudicata*, based on the proceeding had in the other case. A motion to strike out the plea was overruled, and an order was entered reciting, "Having heard argument upon said motion, and considering that the plea of *res adjudicata* is a good plea, the court doth overrule the motion, dismiss the application, and decline to proceed further in the cause," wherefore the jury was discharged. Afterwards the Yazoo & Mississippi Valley Railroad Company filed its petition in this case in the circuit court of Tallahatchie county for a writ of mandamus directed to the justice of the peace, Sullivan, and to the jurors who had been impaneled in said eminent domain court, compelling them to proceed with their duties in the matter. The defendants appeared and filed a demurrer to this petition, assigning as causes of demurrer that the court was without power by mandamus to compel the defendant Sullivan, who presided at the eminent domain court, to decide the question raised in his court in the way to be indicated by the circuit court, or to review his actions as judge of the eminent domain court in a mandamus proceeding; that the matters determined by the justice of the peace in the eminent domain court were judicial questions for him to determine on the pleas filed, and the circuit court by mandamus had no power to control his discretion or review his judgment rendered. Upon motion the court struck this demurrer from the file upon the ground that it was frivolous. Defendants then offered to file other pleas to the merits of the petition, setting up special matters of defense, and the court refused to permit them to be filed. The court entered an order awarding the writ of mandamus, directing the justice of the peace and the jurors to reassemble at a certain time and place named, and to proceed

as the law directs to assess the damages sustained by the parties interested in the land sought to be condemned, and ordering the justice of the peace to have other competent jurors summoned in case the jurors already selected failed to appear.

*Harris, Powell & Harris,* and *Brewer & Creekmore,* for appellants.

In speaking of the exercise of power of eminent domain, Lewis, in his book on that subject, sec. 253, says: "The authority must be strictly pursued. This is a proposition so universally considered and so often reiterated by the courts that it requires no discussion. We shall simply refer to some of the principal cases illustrating the doctrine." In sec. 254 he says: "Statutes giving authority to condemn are strictly construed. All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other. 'An act of this sort,' says Bland, J., 'deserves no favor. To construe it liberally would be sinning against the rights of property.' "

All of this is familiar learning, and it is not necessary for us to cite authorities on this line.

We refer the court to the chapter of the code on the subject of mandamus. Sec. 2846 provides: "The writ of mandamus shall be issued by the circuit court commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act in performance or omission of which the law specially enjoins, as a duty resulting from an office, trust, or station where there is not a plain, adequate, or speedy remedy in the ordinary course of law."

The chapter on eminent domain prescribes precisely the manner in which an eminent domain court should be constituted, assembled, or organized, and the first step is the filing of the petition with the circuit clerk and appointment by him of a justice of the peace and the drawing by the circuit clerk, in

the presence of the sheriff and chancery clerk, of a jury, who, together with the justice of the peace, shall constitute the court of eminent domain. The justice of the peace and the jurors, as well as the parties defendant, are to be summoned by the circuit clerk to assemble at the time and place to be designated by him. No power whatever is given to the justice of the peace to summon the jury, or any part of it, or to summon the parties, or to issue any writs whatever. The law enjoins no duty of this character upon him any more than it enjoins it upon the jurors. It is not a duty resulting from the office. The summons is issued not only by the clerk for the jurors, but also for the justice of the peace, and there is nowhere in the statute any power given the justice of the peace, either expressly or by implication, to assemble the jury. The action of mandamus in this state is purely a statutory proceeding, and it only lies to compel the performance of an act which the law enjoins as a duty resulting from office.

Now it will be seen that in the case at bar the eminent domain court had been dissolved, the jury had been dismissed, and the court had become *functus;* it was gone, it no longer existed. The petition asks the circuit court not only by its writ to assemble the court to confer the powers upon the justice of the peace which are not enjoined upon him by the eminent domain chapter and which he does not possess. We quote from the prayer of the petition, which prayer was granted: "That upon the failure of any of the jurors to assemble, the said Sullivan, justice of the peace, shall have other jurors summoned so as to duly organize the court of eminent domain." "That the justice of the peace give notice to all the parties shown by the application of the time and place of the assembling of said justice of the peace and jurors."

There is no authority or duty imposed by law upon the justice of the peace to summon the jurors or to summon the parties. He has no power whatever to issue any writs, and this power could not be conferred upon him by mandamus.

Notwithstanding the fact that the authorities are firmly fixed that the statutory directions for exercising the power of eminent domain court must be strictly followed, we have here the circuit court by a writ of mandamus assembling the court, whereas the statute provides that this court shall be assembled by the sheriff under writs issued by the circuit clerk; and the circuit court goes further and confers powers upon the justice of the peace which, by law, he does not possess, directing him to perform duties which are not enjoined upon him by virtue of his office; and we insist that this judgment on these grounds should be reversed. If the clerk of the court, after the petition had been filed, should refuse to issue writs as required by law, the court could by writ of mandamus compel him to issue them. If, after the writs had been placed in the hands of the sheriff, he refused to execute them, the court, by its writ of mandamus, could compel him to do so, but the court cannot confer the powers upon the justice of the peace which are not given him by the statute.

The justice of the peace is with the jury a constituent part of the court, charged by the statute with the duty of giving an instruction and making certain entries. He has no power to assemble a jury in the first instance or to reassemble one after it has been discharged, whether rightfully or wrongfully.

It is manifest that the court below in acting upon this demurrer was proceeding upon the idea that the eminent domain court could not consider any question going to the right of the petitioner to condemn the land; that it must proceed, whether they had the right or not, and the justice must give instruction prescribed by law, and that he could do nothing else; that his powers were limited to that and to that alone. In this we do not concur. Is it to be held, regardless of the right or the authority of the petitioner to exercise the power of eminent domain, that the court must proceed to award damages, that it could consider no question whatever, although it might be manifest from the face of the paper that the party had no right or

authority whatever? Suppose a private individual, without any shadow or pretense of right to exercise the power of eminent domain, should file a petition and have the court assembled, and the petition should show upon its face that it was for a private, and not for a public, use that the condemnation was sought, must the justice of the peace proceed and instruct the jury to award damages and make the entries prescribed by the statute in the face of this? Cannot this question be settled by the justice of the peace of the eminent domain court *in limine?*

Cannot the jurisdictional facts be raised in the eminent domain court? The eminent domain court has jurisdiction only in those cases where the person or corporation applying has the right and states that right with certainty. It has no jurisdiction where a person has no right and does not state a right.

The question as to the right of eminent domain is made by the constitution a judicial question, and this question when settled by the eminent domain court cannot certainly be reviewed in a mandamus suit.

We insist that the eminent domain court has a right to determine *in limine* the question of its jurisdiction, and this discretion cannot be controlled by a writ of mandamus. *Monroe County* v. *State,* 63 Miss., 135; *State Board* v. *West Point,* 60 Miss., 638; *Clayton* v. *McWilliams,* 49 Miss., 311; *Vicksburg* v. *Rainwater,* 47 Miss., 547; *Swan* v. *Gray,* 44 Miss., 383; *Attala Co.* v. *Grant,* 9 Smed. & M., 77; *Madison County* v. *Alexander,* Walker, 533.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellee.

It is patent at a glance that the condemnation of land for the private use of a railroad corporation is not a matter of such general public interest as to bring it within that class of cases which the attorney-general of this state is authorized by law to institute and prosecute in his name for the benefit of third persons. The whole proceeding instituted in the name of the attorney-general was improperly conceived, and the action of

the circuit judge in refusing to issue a writ of mandamus on the petition of the attorney-general in such a matter, and of his refusal to consider the matter in vacation, were eminently correct and proper.

While the taking of lands under condemnation proceedings by railroad companies for their proper uses has uniformly been held to be a taking for public use, still the taking in itself is not a right to be exercised by the attorney-general of the state for the benefit of the railroad company, but by the railroad company itself, in its own name and on its own responsibility, under the charter or under the general law.

The duties of the justice of the peace presiding over the special domain court, under ch. 40, Code 1892, are ministerial rather than judicial. The justice of the peace is vested with no authority for the convening or organization of a special domain court under this chapter. His duties are clearly defined by sec. 1680, which expressly provides that the justice of the peace and the jury, constituting together the court, shall only exercise the jurisdiction and power enumerated in the chapter. The form of the instruction by the justice to the jury is given, and the only judgment the justice may enter is set out in sec. 1692.

The justice is not vested with any judicial power effectual to dispose of the case without the intervention of the jury, by the provisions of ch. 40. The justice and the jury, acting together, merely constitute a board of assessors, and the whole purpose of the chapter is to secure an assessment of value and damages and to make a complete record of condemnation and judgment, so that either party, feeling aggrieved, may appeal to the circuit court, which is vested with general jurisdiction to hear and determine all issues and to enter all proper judgments.

Under the former provisions for condemnation proceedings the sheriff was required to impanel the jury and to control the body during its deliberations; certainly the sheriff had no

power to judicially determine any general question of juris-
diction or of law determinate of the controversy during the
course of the trial.   The absence from ch. 40 of authority
to the justice to judicially determine any of the material ques-
tions which might arise, which would go to the very essence and
gist of the controversy, does not render the statute unconsti-
tutional, because there is adequate remedy provided by appeal
to a court of plenary and general jurisdiction, with power and
authority on the trial of all issues *de novo* to enter all proper
judgments.

It has been held that any person aggrieved by any wrongful
action had under color of eminent domain proceedings may
obtain protection by injunction if the proceedings were void,
or if the statute under which the condemnation was had did not
authorize appeals from judgments in such cases; but the same
authorities hold that where provisions for an appeal are made
to a court of general jurisdiction and authority to determine
all questions, there is no violation or denial of essential rights,
and no injunction will lie, but the proceedings must be prose-
cuted to a final conclusion in the court of general jurisdiction.

Section 17 of the constitution did not, *ex proprio vigore,* in-
vest the justice of the peace with all the powers and jurisdic-
tions of a court of general record.   If the statute had provided
that the president of the board of supervisors should conduct
the proceedings, they would have been as valid as where the pro-
vision is that the justice of the peace shall do so.   Therefore the
action of the justice of the peace, in sustaining the demurrer
interposed in the first proceeding and in sustaining the plea of
*res adjudicata* interposed by defendants in the last proceeding,
was unauthorized and improper.

We submit to the court that after the improper action of the
justice in passing on demurrers in special pleas and in sus-
taining one or the other, the railroad company was without
remedy, except by mandamus.   Section 1696 of ch. 40
simply gives the right to appeal to the circuit court from the

findings of the jury. The whole chapter contemplates that the justice and the jury shall discharge the duties imposed upon them by the law, and it is only from the final judgment and findings of the jury that an appeal is granted. There were no findings of the jury or final judgment on the merits in either of these proceedings. One of the component factors of the eminent domain court—namely, the justice of the peace—merely rendered a judgment disposing of the case on a matter about which he had no right to adjudicate, and then declined to perform his duty further and abandoned the court.

In the absence of action by the jury in assessing values and damages, there could be no appeal, and had there been an appeal, the circuit court would have made the condemnation, while the domain chapter specifically provides that this right should be exercised as provided in that chapter and be made by the special tribunal therein provided for.

The circuit court is not vested with original jurisdiction without the intervention of the special domain court to make the condemnations. Reasoning on general questions is unnecessary in the face of the express provision of the statute, which only grants the right of appeal from the actual findings of the jury. *Certiorari* would not have been an effectual remedy. On *certiorari* the court is confined to questions of law appearing on the face of the record; and if it is possible, it shall enter such judgment as should have been rendered, or, if all the facts are not shown, may try the case anew. Code 1892, § 89.

Suppose in the case at bar the record had been taken to the circuit court by *certiorari*. The circuit court, examining the record and settling the questions of law arising on the face of it, would, we will assume, have decided that the action of the justice of the peace was wrong and unauthorized. Then what result would have followed? It could not have proceeded to try the case anew, because there was no condemnation below, no ascertainment and declaration by the jury of the questions of values and damages. The circuit court would have been

powerless to try the case *de novo* on these issues, and, therefore, all that the circuit court could have done in any event would have been to say that the action of the justice of the peace in dismissing by his sole act the petition was wrong.

The railroad company would have then been in the same plight exactly that it was in when the petition for the mandamus was presented to the circuit judge. If the circuit court, on the *certiorari,* should have said the proceedings were void, it had no power to command the justice to continue or to reconvene the special eminent domain court.

The remedy by *certiorari,* under sec. 89, and even as liberally construed by our own court in extending the remedy to all possible cases, would have been wholly ineffectual to provide for a determination of the issues raised in the condemnation proceeding or to have compelled the justice to proceed with his duties.

· The action of the circuit judge in granting the writ of mandamus was evidently correct. When the justice of the peace assumed authority to determine as a preliminary question and to sustain the plea of *res adjudicata,* and thereupon refused to proceed further with the cause, he simply vainly attempted to do a thing he could not do, and had no power or authority to do ; that was to dissolve the court. His action did not amount to a dissolution of the court. The court of special eminent domain could not be so dissolved under the law. The court had been duly organized and the jury impaneled. The action of the justice in refusing to proceed with the court and attempting to dissolve the same was illegal, and had the effect only to suspend the procedures.

A special court of eminent domain has no fixed terms which, by their expiration, render the court *functus officii*. The court convenes on the day fixed, and after it is properly organized it continues to be in force and operation until the duties imposed on it by law are performed.

Suppose justices of the peace and jurors, legally summoned ·

to constitute a special court of eminent domain, should, through prejudice or for any other reason, refuse to discharge their duties, refuse to meet, refuse to obey the mandates of the law, the inevitable conclusion would result, if such conduct was allowed, that there could never be a condemnation proceeding, simply because the special agency, provided by law, could not be availed of. ·

And, again, if the contentions of defendants are sound, then any justice of the peace, at any time, on any pretext, could dismiss a petition for condemnation of land, attempt to dissolve his court, and leave the railroad company without remedy, either by direct appeal, by *certiorari,* or by mandamus. The law has provided a special tribunal for the condemnation proceedings, has put in this tribunal and none other the power to consummate this condemnation and to protect the rights of persons affected thereby. It is the sole and exclusive course of procedure provided by Code 1892. Preferably, it is the course the law desires and declares shall be pursued. And yet to say that a justice of the peace, summoned only as a part of this tribunal and having his powers and duties clearly defined and marked out, could by any action on his part cut off the public agency with power to make condemnation, from any legal acquisition of rights of way, would be a travesty on the law. .

WHITFIELD, C. J., delivered the opinion of the court.

We do not think that a justice of the peace, in eminent domain proceeding, has any judicial function to perform. He acts ministerially only. Every step which he is to take is precisely marked out by the statute. The objection that he ought to be permitted to decide whether he has jurisdiction, or judicially to pass upon any other question, is more plausible than sound. It results from the very nature of the case that the procedure is summary—as, for example, no appeal is allowed except from the findings of the jury—and it is perfectly obvious

that a *certiorari* could effect nothing in this sort of case. Formerly the sheriff organized this court. The justice of the peace is simply substituted for the sheriff. The plea of *res adjudicata,* of course, was not good. All the proceedings instituted in the first suit were void. But we think the order of the circuit judge went too far. The clerk of the circuit court is directed by the law to fix the time at which, and the place where, the court of eminent domain is to meet, and to summon eighteen men from whom the jury is to be selected. We do not think the circuit judge had power to fix the time or place, in his order, for the reconvening of the eminent domain court or to direct the justice of the peace to have other competent parties summoned as jurors. The true view, in our judgment, of this muddled situation is simply this: That, the eminent domain court having been regularly constituted and organized, all that has been since done amounts to a mere suspension of its functions, and it is enough for the circuit judge, in awarding mandamus, to command the justice of the peace to reconvene his court and proceed according to law.

*Reversed and remanded, with instructions to modify the order as indicated.*