592 So.2d 927 (1991)
McDONALD'S CORPORATION
v.
ROBINSON INDUSTRIES, INC. and Mississippi State Highway Commission.
McDONALD'S CORPORATION and Robinson Industries, Inc.
v.
STATE HIGHWAY COMMISSION OF MISSISSIPPI.
Nos. 07-CA-59270, 07-CA-59419.
Supreme Court of Mississippi.
August 21, 1991.
As Modified on Denial of Rehearing February 12, 1992.
*928 Stephen W. Rimmer, Stephen E. Gardner, Young Scanlon & Sessums Firm, Shane F. Langston, Langston & Frazer, Robert H. Weaver, James L. Jones, Watkins Ludlam & Stennis, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Alan M. Purdie, Henry C. Clay, III, Asst. Attys. Gen., John H. Price, Jr., Susan L. Runnels, Thomas Price Alston Jones & Davis, Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
In 1984, the Mississippi State Highway Commission initiated condemnation proceedings in the Special Court of Eminent Domain in the First Judicial District of Hinds County for property owned by McDonald's Corporation and leased by Robinson Industries. The property is located on the west frontage road of I-55 North, just south of Briarwood.
The Highway Commission submitted a statement of values estimating damages of $219,500.00. However, the jury awarded damages in the amount of $225,000.00 to McDonald's and $275,000.00 to Robinson, for a total of $500,000.00. The Highway Commission appealed to this Court.
In State Highway Commission of Mississippi v. McDonald's Corp., 509 So.2d 856 (Miss. 1987), we noticed as plain error, under Supreme Court Rule 6(b), that McDonald's had only a revocable permit giving it access to the frontage road and that therefore McDonald's and Robinson were being paid for land they did not own. We affirmed a judgment in the amount of $1,000.00 subject to McDonald's and Robinson entering a remittitur of $499,000.00 within fifteen days of the decision. If McDonald's and Robinson refused to enter a remittitur, we ordered that the case be reversed and remanded for proceedings consistent with our opinion.
McDonald's and Robinson petitioned this Court for a rehearing. They supplied this Court, for the first time, with a deed dated June 21, 1957. The deed was from Theo Costas to the Highway Commission and conveyed to the Highway Commission certain property which included "all abutters rights of access in and to said highway appurtenant to grantor's remaining property, including any and all existing rights of access," but excepted
the right of access from grantor's property to that section of frontage road beginning opposite Station 387+03 and ending opposite Station 403+30 from the left of said center line, and beginning opposite Station 387+03 and ending opposite Station 404+10 on the right of said center line as shown on plat attached hereto and made a part hereof by reference.
Another deed was supplied to show that the heirs of Costas conveyed the subject property to Franchise Realty Interstate Corporation on December 17, 1976. Franchise Realty has since merged with McDonald's.
McDonald's and Robinson also supplied an affidavit by Robert Barnes, a civil engineer who had been employed by the Highway Commission for eighteen years. Barnes stated, that in his professional opinion, *929 "the tract of property owned by McDonald's Corporation lies between Station No. 403+03 and 387+03."
The Mississippi State Highway Commission argued that this Court should not consider new evidence which was not part of the record on appeal. We denied the petition for rehearing without a written opinion.
McDonald's and Robinson refused to enter a remittitur. Instead, McDonald's initiated proceedings in chancery court to prove that it did have access rights to the frontage road. McDonald's asked the court to enjoin the Highway Commission from proceeding with the retrial in the Special Court of Eminent Domain until the chancery court had made a determination concerning the access rights.
The Highway Commission filed a Motion to Dismiss and asked that Rule 11 sanctions be imposed. The Highway Commission contended that the proceeding in chancery court was barred since this Court had made a ruling in the case. On April 6, 1988, the Chancery Court dismissed the case on the ground of res judicata and imposed Rule 11 sanctions. McDonald's has appealed that decision.
The Special Court of Eminent Domain retried the case. McDonald's and Robinson contended that this Court was incorrect as to its ruling regarding the access rights to the frontage road and asked that the case be transferred to chancery court for a determination on the issue since an eminent domain court does not have jurisdiction over questions of title. The Eminent Domain Court denied the request and proceeded with the retrial. On April 27, 1988, the court awarded damages in the amount of $2,100.00 to each condemnee for a total of $4,200.00. McDonald's and Robinson have appealed that decision.
These two appeals have been consolidated for review upon Motion filed by McDonald's. McDonald's and Robinson assign a number of errors in the two appeals. Most of the assignments of error deal with the jurisdiction of the eminent domain court. Our discussion of the court's jurisdiction disposes of the majority of assignments. Two remaining assignments deal with Rule 11 sanctions and attorney's fees.

LAW

I. MAY AN EMINENT DOMAIN COURT TRY TITLE?
The question of whether an eminent domain court can try title involves two issues. First, is an eminent domain court prohibited from trying title? Secondly, may title be tried only in chancery court?

A. IS AN EMINENT DOMAIN COURT PROHIBITED FROM TRYING TITLE?
Until 1971, the jurisdiction of the court of eminent domain was exercised by a justice of the peace and a jury. Code of 1892, ch. 40, § 1680; Code of 1906, ch. 43, § 1855; Code of 1927, ch. 24, § 1561; Code of 1930, ch. 26, § 1481; Mississippi Code of 1942 § 2750. The function of the justice of the peace, in an eminent domain proceeding, was ministerial rather than judicial. In fulfilling that function, the justice could only take those steps as were "precisely marked out by the statute." Sullivan v. Yazoo & Mississippi Valley Railroad Co., 85 Miss. 649, 660, 38 So. 33, 34 (1904).
In 1971, the Legislature revised the statutes on eminent domain by repealing those sections dealing with eminent domain, §§ 2749-2782 of the Mississippi Code of 1972, and reenacting a new chapter. 1971 General Laws of Mississippi, ch. 520. The reenactment is codified in chapter 27 of the Mississippi Code of 1972. See Miss. Code Ann. §§ 11-27-1 to 11-27-91 (1972 & Supp. 1990). Jurisdiction of the special court of eminent domain is now exercised by virtue of Miss. Code Ann. § 11-27-3 (1972) which reads:
A special court of eminent domain is hereby created, to consist of a judge, jury, and such other officers and personnel as hereinafter set out, and it shall have and exercise the jurisdiction and powers hereinafter enumerated. The original powers and jurisdiction shall be and is hereby fixed in the county court in each county that has elected to come *930 under the provisions of section 9-9-1 Mississippi Code of 1972, or that may hereafter come under the provisions of said section 9-9-1, and in every other county of this state, the original powers and jurisdiction shall be and is hereby fixed in the circuit court of such county, which said powers and jurisdiction may be exercised in full either in termtime or vacation, or both.
Historically, this Court has limited the subject matter jurisdiction of the court of eminent domain. No statute, the Court has said, gives the court of eminent domain any power other than the power to determine the amount of compensation. The Court has thus limited the jurisdiction based on a strict construction of the eminent domain statutes. However, the Legislature has made changes in the statutes dealing with eminent domain over the years. An examination of those changes reveals that the reasoning upon which this Court relied to limit the jurisdiction of the eminent domain court is no longer viable.
Those cases which address the limited jurisdiction of an eminent domain court usually do so when Section 17 of the Mississippi Constitution is involved, i.e. a challenge is made as to whether the contemplated use is public. Section 17 provides that
[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.
In Vinegar Bend Lumber Co. v. Oak Grove & Georgetown Railroad Co., 89 Miss. 84, 43 So. 292 (1906), this Court discussed at some length the limited jurisdiction of an eminent domain court in relation to a question raised under Section 17.
The right to take private property is a judicial question, made so by the constitution, and no form of charter, or powers granted in the charter, can take the settlement of this question away from the courts. The right to condemn and take is dependent upon two things: First, a provision in the charter authorizing it; and, second, that the right will be exercised for only such purposes as the constitution allows private property to be taken, to-wit: for public purposes.
Section 1680, Code 1892, provides for the creation of a special court of eminent domain to exercise the jurisdiction and powers enumerated in the chapter. Section 1681 provides how the court shall be organized... . On a review of the whole chapter on the subject of eminent domain, we unhesitatingly arrive at the conclusion that the legislature never intended to create a tribunal of full jurisdiction to try any and all issues that might be raised on the subject of the right to condemn. The court created by this chapter is a special court, created for a special purpose, having an exceedingly limited jurisdiction, exercising no judicial functions, and clothed with the power to try the only issue that is confided to it by the statute; and that issue is, singly and solely, to fix the compensation which shall be paid to the landowner for his land... . The chapter itself presupposes that the right to condemn property exists, and there is no provision made in the whole chapter on this subject giving to the eminent domain court the power to adjudicate the issue as to whether or not the right to exercise the power of eminent domain does or does not exist. The sole and only power conferred by this chapter, from its first section to its last, is the right, and the right only, to ascertain and fix compensation for the taking of the land where the right to do so exists.
Vinegar Bend, 89 Miss. at 104-105, 43 So. at 295.
In other words, this Court was saying that the eminent domain court has no authority to decide whether the condemnor has the right to take the land. The Court said that question must be tried by injunction in chancery court. As additional support *931 for limiting the jurisdiction of the eminent domain court to the one narrow issue of determining compensation, the Court cited section 1862 of the Code of 1906 which prohibited a justice of the peace from quashing or dismissing the proceedings. The Court said that dismissal might be necessary if any defense offered by the pleas were found by the court to be true.
Until 1930, the Court continued to hold that the only way to test the question of the right to take was by injunction. See Dantzler v. Mississippi State Highway Commission, 187 Miss. 721, 193 So. 4 (1940). However, the Code of 1930 included a new section, Section 1510, in the chapter on eminent domain. That statute allowed for a writ of prohibition to test the questions of "(1) whether the applicant seeking to exercise the right of eminent domain is, in character, such a corporation, association, district or other legal entity as is entitled to the right, and/or (2) whether there is a public necessity for the taking of the particular property or a part thereof which it is proposed to condemn."
After Section 1510 was added to allow the writ of prohibition, this Court again considered the question of the jurisdiction of the eminent domain court and reaffirmed its previous decisions limiting that court's jurisdiction. In Mississippi State Highway Commission v. Channell, 241 Miss. 290, 130 So.2d 563 (1961), the Court noted that there had been no change in the law, other than allowing for a writ of prohibition to be made to circuit court, since the decision rendered in Vinegar Bend. The only change made by Section 1510 was to allow a writ to be made to circuit court rather than asking for an injunction in chancery court. "Nowhere has there been any statute giving the special court of eminent domain any power to hear or determine any question save that of compensation and that court is still enjoined by statute from dismissing the proceedings." Channell, 241 Miss. at 294, 130 So.2d at 564.
The Legislature reenacted the chapter dealing with eminent domain in 1971. The reenactment took the jurisdiction of the eminent domain court from the justice of the peace and gave that jurisdiction to county courts in those counties having such and to circuit courts in those counties which do not have a county court. Another change in the chapter was a deletion of the section allowing for a writ of prohibition. Instead, a new section was added. That section, codified as § 11-27-15 in the Mississippi Code of 1972, allows
the same court where the petition is pending ... to dismiss the petition on any of the following grounds: (1) that the petitioner seeking to exercise the right of eminent domain is not, in character, such a corporation, association, district or other legal entity as is entitled to the right; (2) that there is no public necessity for the taking of the particular property or a part thereof which it is proposed to condemn; or (3) that the contemplated use alleged to be a public use is not in law a public use for which private property may be taken or damaged. Any such motion, if filed, shall be heard and decided by the judge as a preference proceeding, without a jury, prior to the hearing on the petition.
This Court has said that enactment of this section was obviously a response of the Legislature to carry out the mandate contained in Section 17 of the Mississippi Constitution. Mississippi Power & Light Co. v. Conerly, 460 So.2d 107, 111 (Miss. 1984).
There have been two cases which have specifically addressed the question of whether an eminent domain court can try title. In Evans v. Mississippi Power Co., 206 So.2d 321 (Miss. 1968), this Court said that an eminent domain court can only determine the amount of compensation; it cannot try title. The basis of the Court's decision was twofold. First, the Court said that the statutes on eminent domain, §§ 2749-2782 of the Mississippi Code of 1942, clearly express the intention that the court of eminent domain only be allowed to determine the amount of compensation. Secondly, the Court said that previous case law also limited the jurisdiction of the eminent domain court.
It was tersely and succinctly stated in Mississippi State Highway Commission *932 v. West, 181 Miss. 206, 219, 179 So. 279, 282 (1938), in these words:
"There are numerous decisions holding that the sole object of a petition to condemn land for public use is to ascertain the compensation to be paid; * * *." (Emphasis added.)
Evans, 206 So.2d at 323.
The second case is Whitehead v. Mississippi State Highway Commission, 254 So.2d 357 (Miss. 1971). The Court again said that an eminent domain court cannot try title. However, the Court offered no support or explanation for that holding other than saying that "[t]his is not a proper function for a special court of eminent domain." Whitehead, 254 So.2d at 359.
Evans, supra, relied on the case of Mississippi State Highway Commission v. West, 181 Miss. 206, 179 So. 279 (1938). An examination of West reveals that reliance on West as support for holding that an eminent domain court cannot try title was misplaced. The question before the Court in West was whether a petitioner was precluded from questioning the title of purported lessees who were in possession of the land sought to be condemned. The Court did in fact cite cases which had held that the only object of a petition seeking to condemn land was to determine the amount of compensation and that the petitioner was bound by the statements in the petition and the defendants did not have to establish their title. However, the Court said that the public should not have to pay compensation to a person "whose proof on the trial affirmatively discloses that he had no title or interest in the property sought to be condemned. While the jury in such a proceeding is never concerned with the question of title, this rule does not apply to the court in its application of the law." West, 181 Miss. at 222, 179 So. at 284.
In Mississippi State Highway Commission v. Channell, 241 Miss. 290, 130 So.2d 563 (1961), the Court explained its holding in West. West was an appeal from the circuit court which in turn had heard an appeal from an eminent domain court. This Court said that the result of West was not to extend the jurisdiction of a circuit court but to provide the circuit court with additional authority beyond that of the eminent domain court for instructing the jury on matters such as who is entitled to the damages. "But the scope of the inquiry does not extend beyond the amount of compensation and the parties entitled thereto." Channell, 241 Miss. at 295, 130 So.2d at 565 (emphasis added).
Although the eminent domain "court is `special' in that it utilizes some procedures peculiarly adapted to actions to determine just compensation for public taking of private property, see Mississippi State Highway Comm. v. First Methodist Church of Biloxi, 323 So.2d 92 (Miss. 1975), its powers clearly flow from a particularization of the jurisdiction conferred upon the county and circuit courts of this state." Barrett v. State Highway Commission, 385 So.2d 627, 628 (Miss. 1980). Because of that particularization of jurisdiction, we have held that the Mississippi Rules of Evidence apply to eminent domain proceedings. Hudspeth v. State Highway Commission of Mississippi, 534 So.2d 210, 212 (Miss. 1988). Likewise, the Mississippi Rules of Civil Procedure govern the procedural aspects of an eminent domain proceeding unless a statutory procedure is found to the contrary. See Rule 81(a)(7), Miss.R.Civ.P. and State Highway Commission of Mississippi v. Harvard, 508 So.2d 1099, 1103 (Miss. 1987).
Certainly, the 1971 reenactment of the chapter dealing with eminent domain necessitates a change in the way we view the jurisdiction of an eminent domain court. The statutes, as reenacted, have expanded the role of the eminent domain court. That court is now allowed to determine questions which were previously considered within the province of the circuit court. The court's expanded role allows it to perform functions which are judicial rather than ministerial.
That the jurisdiction of the eminent domain court is no longer exercised by a justice of the peace but is now exercised by the county and circuit courts of this State is an important factor in the expansion of jurisdiction. The jurisdictional powers of *933 an eminent domain court are much broader today than they were even as recently as 1971 when the Court in Whitehead said that an eminent domain court could not try title. The changes in the statutes demonstrate that the Legislature no longer intends eminent domain courts to be limited to determining only the question of the amount of compensation.

B. MAY TITLE BE TRIED ONLY IN CHANCERY COURT?
Chancery courts are given jurisdiction to try title by the Mississippi Constitution. Miss. Const. Art. 6, § 160 (1890). However, jurisdiction to try title is not limited to chancery court. "`[U]nder our system of courts, the jurisdiction to make a conclusive and final adjudication of title to land rests alone with the circuit and chancery courts, and now to a limited extent with the county courts'." McCoy v. McRae, 204 Miss. 309, 320, 37 So.2d 353, 356 (1948) [quoting Vansant v. Dodds, 164 Miss. 787, 144 So. 688 (1932)].
When an action for replevin which is brought to determine who has the right to immediate possession of a particular piece of property is tried in circuit court and "when the right to possession is dependent upon title or ownership, and title or ownership is the issue upon which the decision as to the right of possession actually turns, then a judgment in replevin is as fully conclusive upon the said issue of title or ownership as would be the same determination in any other form or action or in any other court of competent jurisdiction." Fair v. Dickerson, 164 Miss. 432, 441, 144 So. 238, 239 (1932). In an action for ejectment, a court of law may determine the question of title "if the parties are already in a court of law, and can fairly present their respective titles in that court, which are of such character as will there be recognized, and no special reason is presented for equitable interference... ." Huntington v. Allen, 44 Miss. 654, 663 (1870).
In Bell v. City of West Point, 51 Miss. 262 (1875), this Court presented a lengthy discussion of the jurisdiction of the various courts. The Court said,
The 64th section of the 6th article is: `The circuit courts shall have original jurisdiction in all matters, civil and criminal, in this state.' Dwelling a moment on the language, it is broad enough to embrace suits at common law as well as in equity  `all matters civil.' But we know that the purpose was to create a court of common law cognizance, and we, therefore, give that import only to the words. That is plain, from the history of the past as well as from the subsequent sections of the same article. The 16th section provides `for the establishment of chancery courts, with full jurisdiction in all matters of equity,' etc. Reading the two sections together in the light of history, and we have a superior court of original common law jurisdiction, and a court of chancery with full jurisdiction in all matters of equity.
* * * * * *
In determining whether the circuit court has cognizance of a particular suit we must bear in mind that it is a superior court of original jurisdiction over all civil matters, and the inquiry is, has the particular subject been excluded and cognizance been bestowed on some other court?
* * * * * *
To hold at this day, in the light of legislative and judicial history, since 1817, that the constitution organizing the judicial power must have a literal interpretation, would bring into grave doubt the validity of several important statutes, and would deny to the legislature the right to confer new jurisdiction on the several courts, as it might judge convenient.

The constitution does not confine the several courts in a straight jacket. When it established a chancery court `with full jurisdiction in all matters of equity,' it meant that system of equity jurisprudence, unwritten and positive, which existed in this state in 1869, with all its capabilities of improvement and expansion. It left the court free to take its share in a wider development of its peculiar jurisprudence, and to new applications of its principles, to the shifting *934 transactions of men, and the changing condition of society, assisted from time to time by legislative enactments... . It would be unfortunate if the boundaries of the court had been so adjusted in the constitution as that the court of chancery could proceed so far in adjudicating the rights of a legatee or distributee, and then come to a final pause, and turn him over to some other court to obtain full redress. That evil may be obviated by holding that where the constitution gives jurisdiction of the principal subject matter, the legislature may allow it cognizance over cognate and incidental matters, so that by one litigation the whole subject may be terminated.
Bell, 51 Miss. at 270-274 (emphasis added).
We have allowed a chancery court to consider actions at law if those questions are pendent to the claim by which the court has subject matter jurisdiction. Johnson v. Hinds County, 524 So.2d 947 (Miss. 1988). "Where there appears from the face of the well-pleaded complaint an independent basis for equity jurisdiction, our chancery courts may hear and adjudge law claims." Tillotson v. Anders, 551 So.2d 212, 213 (Miss. 1989). A claim is pendent if it "arise[s] out of the same transaction or occurrence as the principal claim or, as others put it, out of a common nucleus of operative fact." Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985).
A circuit court has also been allowed to hear equity claims via pendent jurisdiction. Gibson v. Manuel, 534 So.2d 199 (Miss. 1988) (circuit court could consider a motion for preliminary injunction); American Electric, A Division of FL Industries v. Singarayar, 530 So.2d 1319 (Miss. 1988) (circuit court could consider claims for equitable relief); Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098 (Miss. 1987) (circuit court could consider claims for equitable relief). In fact, in Hall, supra, we indicated that it is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction.
We have allowed a chancery court to hear issues that are within the jurisdiction of the eminent domain court. The case of Johnson v. Hinds County, supra, involved what the appellant alleged was an attempt to take a public road by the county. The appellant said that the action could only be heard by an eminent domain court. We said that the chancery court had subject matter jurisdiction of the action since not only did the claim involve a question of title but also equitable relief was being sought. Since the court had subject matter jurisdiction, it could also hear any non-chancery claims especially where "the so-called eminent domain proceeding is at best one for inverse condemnation." Johnson, 524 So.2d at 953.
In H.K. Porter Co., Inc. v. Board of Supervisors of Jackson County, 324 So.2d 746 (Miss. 1975), Porter brought an action in chancery court to confirm its title to 204 acres of land which had been conveyed to it by Jackson County. Jackson County responded by asking the court to confirm that the land belonged to the State of Mississippi to be used for public purposes. The chancellor held that Jackson County could reacquire the land by eminent domain.
Porter appealed the chancellor's decision contending that the chancery court did not have jurisdiction to make that determination. We said that while ordinarily that question might only be decided by an eminent domain court, "where as here, one of the issues raised relative to the confirmation was the question of whether the county ... could reacquire the land since it was no longer being used for industrial purposes, the court had jurisdiction to decide the question." H.K. Porter Co., Inc., 324 So.2d at 751.
Clearly, trying title is not limited to the chancery court if another court has subject matter jurisdiction of the action and the issue of title is pendent to that claim. Historically, this Court has allowed courts other than chancery to try title where that issue is incidental to the main action. Where the eminent domain court has subject matter jurisdiction of a condemnation *935 action based upon the pleadings presented by the parties, the court should be allowed to adjudicate title where that issue arises out of the same occurrence. Moreover, application of the Mississippi Rules of Civil Procedure to eminent domain proceedings ensures that all necessary parties to the title dispute will be joined. Like a motion filed under § 11-27-15, trying title is a function of the judge and "shall be heard and decided by the judge as a preference proceeding, without a jury, prior to the hearing on the petition."

II. DID THE CHANCERY COURT ERR IN IMPOSING RULE 11 SANCTIONS?
The Chancery Court imposed Rule 11 sanctions against McDonald's in the amount of $13,614.60. McDonald's contends the court erred in doing so.
Sanctions are allowed by Rule 11(b) of the Mississippi Rules of Civil Procedure which reads:
If a pleading or motion is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading or motion had not been served. For wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted. If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.
McDonald's filed the suit in chancery court in good faith. In the Complaint to Quiet Title or to Remove a Cloud and For Injunctive Relief, McDonald's stated that "the law is well settled that in Mississippi the Chancery Courts have exclusive original jurisdiction to decide questions affecting the title to real property and real property interests." By virtue of our holdings in Evans and Whitehead, McDonald's was following what it believed to be the correct procedure for trying title. We reverse and render on the award of Rule 11 sanctions.

III. SHOULD "DUE COMPENSATION" UNDER MISSISSIPPI CONSTITUTION ARTICLE III, § 17 INCLUDE ATTORNEY'S FEES AND EXPERT WITNESS FEES?
Section 17 of the Mississippi Constitution provides that "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof." McDonald's and Robinson submitted a jury instruction in the eminent domain proceeding asking for attorney's fees and expert witness fees. The court refused the instruction. McDonald's contends that the court erred by refusing the instruction because "due compensation" allowed by Section 17 includes attorney's fees and expert witness fees.
Miss. Code Ann. § 11-27-37 (Supp. 1990) specifies when expenses may be awarded to the defendant in an eminent domain proceeding. That section reads:
Right of action for expense of defending suit  when available.
In case the petitioner shall fail to pay the damages and costs awarded to the defendant within ninety (90) days from the date of the rendering of the final judgment, if such judgment is not appealed from, or in case the suit shall be dismissed by the petitioner except pursuant to settlement, or the judgment be that the petitioner is not entitled to a judgment condemning property, the defendant may recover of the petitioner in an action brought therefor all reasonable expenses, including attorneys' fees, incurred by him in defending the suit.
In Jackson Redevelopment Authority v. King, Inc., 364 So.2d 1104 (Miss. 1978), the property owners argued that § 11-27-37 was unconstitutional because it allows recovery of expenses in limited situations. We said that "[w]e perceive no violation of equal protection of the law because the statute makes provision for entirely different *936 situations, a permissible classification." Jackson Redevelopment Authority, 364 So.2d at 1112.
Furthermore, we declined to consider the question of whether the property owners in that case were entitled to attorney's fees and other expenses as being within the meaning of "due compensation." Since, the property was not taken, there was no justiciable issue. Although not passing on the question, we noted that "the United States Supreme Court held in Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930) that attorneys fees and expenses are not embraced within just compensation for land taken by eminent domain." Id. at 1111.
The question of title has yet to be determined in this case. Until that decision is made, there is no basis on which McDonald's and Robinson can be awarded expenses and attorney's fees.

IV. CONCLUSION
The reasons which have historically been given for limiting the jurisdiction of the eminent domain court to the narrow question of the amount of compensation are no longer justified in view of the changes which have been made in the statutes governing eminent domain actions. By reenacting the chapter on eminent domain, the Legislature now allows the eminent domain court to perform functions which are judicial. The eminent domain court has the power to determine questions which were once left to the circuit court.
By way of pendent jurisdiction, the eminent domain court is hereby allowed to decide questions of title where that issue arises from the "common nucleus of operative fact." That is, where the eminent domain court has subject matter jurisdiction of a condemnation proceeding as established in the pleadings, the court may determine any questions of title which may arise from the proceedings. To the extent that Evans v. Mississippi Power Co., 206 So.2d 321 (Miss. 1968), and Whitehead v. Mississippi State Highway Commission, 254 So.2d 357 (Miss. 1971) hold otherwise, they are overruled.
In State Highway Commission of Mississippi v. McDonald's Corp., 509 So.2d 856 (Miss. 1987), we noticed by plain error that McDonald's and Robinson had only a revocable permit giving them access to the frontage road. It should be pointed out that when this Court noticed from the record that all the landowners appeared to hold from the Highway Department was a revocable permit, we called the parties' attention to this and invited them to respond. 509 So.2d at 860. Had the landowners' counsel then supplied us with the documents and affidavit they first supplied us on a petition for rehearing, the case could have then been remanded with proper instructions to the eminent domain court to determine the legal effect, if any, of the reservation in the Costas' deed.
For some reason, counsel chose not to inform us at that time. A petition for rehearing was not the proper procedure to bring this before this Court and we denied the petition. Thus the issue of title was never addressed by this Court.
From the record on the first appeal we would be hard put not to hold that the landowners had waived the right to assert ownership under the Costas' deed by their failure to bring it either to the eminent domain or this Court's attention until after our decision was handed down April 8, 1987.
The Highway Department was equally at fault, however, because it initially offered the landowners $219,500 when it appeared that they only held a revocable permit. This offer continued throughout the eminent domain trial and no doubt would have continued had this Court, not the Highway Department, caught the "oversight."
Also, we noted that the Highway Department on remand had authority to amend its pleadings. 509 So.2d at 863. The landowners are entitled to the same right. The issue the landowners assert was simply one that was never addressed, and they are entitled to their day in court on this issue. Likewise, we foreclose no defense the *937 Highway Department may assert to such claim by the landowners.
Upon remand and retrial, McDonald's and Robinson have introduced these documents into evidence. They are now in the record before us. The Highway Commission argues that our former decision is the law of the case. We refuse to so rule. As this Court has said,
We do not think, however, that this rule is so fixed and binding upon the court that it may not depart from its former decision on a subsequent appeal if the former decision in its judgment after mature consideration is erroneous and wrongful and would lead to unjust results. Where the facts are the same, and where there has been no change of conditions or situations as that a change of decision would work wrong and injustice, the court may, on the subsequent appeal, correct its former decision where it is manifestly wrong.
Brewer v. Browning, 115 Miss. 358, 364, 76 So. 267, (1917).
Since all the facts were not before this Court in the prior appeal, to enforce the rule of the law of the case would result in injustice. We reverse and remand to the Special Court of Eminent Domain.
AFFIRM DISMISSAL OF CHANCERY COURT ACTION; REVERSE AND RENDER AS TO RULE 11 SANCTIONS; REVERSE AND REMAND TO SPECIAL COURT OF EMINENT DOMAIN TO PROCEED IN A MANNER NOT INCONSISTENT WITH THIS OPINION.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., DAN LEE, P.J., and ROBERTSON, PITTMAN and BANKS, JJ., concur.
HAWKINS, P.J., concurs in part and dissents in part by separate written opinion.
McRAE, J., dissents by separate written opinion.
PRATHER, J., not participating.
HAWKINS, Presiding Justice, concurring in part; dissenting in part:
I concur with the majority that this case must be reversed.
I join Justice McRae's dissent that the exclusive jurisdiction for cases involving title to real property is in the chancery courts of this state.
McRAE, Justice, dissenting:
The majority today appears to have discarded stare decisis, which has guided our Courts before the 1890 Constitution, and to have embarked on an uncharted course toward an apparent attempt at consolidation of chancery and circuit court practice. The majority has attempted by academic gymnastics to waltz around our Constitution of 1890, over a hundred years of case decisions and legislative enactments in order to give a "third bite of the apple" to McDonald's and Robinson in this case. It then seasons its decision by sprinkling the Mississippi Rules of Civil Procedure upon all eminent domain cases, and totally ignores the principle of law which the legislature enacted under Miss. Code Ann. § 11-27-3 (1972), i.e., that a special court of eminent domain is created to consist of a judge and jury, with original powers fixed in the circuit and county courts of this state, thereby leaving a jury to try title disputes, since they are factual issues.
This writer recognizes that only nineteen (19) of the eighty-two (82) counties have county courts. The other sixty-three (63) counties try their condemnation proceedings before a jury in a circuit court. Regardless of whether they are tried in a county or circuit court, all factual disputes are tried by a jury.
A closer scrutiny of the facts in this case reveals that on June 21, 1957, Theo Costas sold the land abutting the highway to the State Highway Commission for what is now I-55. The majority cited a portion of the deed, but failed to point out that Theo Costas further signed away all rights, claims or damages that were accruing or would accrue to the grantors, their heirs, assigns, legal representatives, on account *938 of construction of a proposed highway, change of grade, and/or any other damage, right or claim whatsoever. The deed states as follows:
It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.
Further, when McDonald's and Robinson, a subsidiary, purchased the property on December 17, 1976, Theo Costas' heirs acknowledged the release of any claim they had with the Highway Commission when they stated:
The warranty of this conveyance is made subject to the following exceptions:
1. Release of Damages Clause affecting the SW-1/4 of the NE-1/4 of the SE-1/4 of Section 12, T6N, R1E contained in Warranty Deed dated November 15, 1948, executed by Alex Holmes to State Highway Commission of Mississippi filed December 4, 1948, at 10:00 A.M., in Book 566 at page 545.
2. Right of Way dated March 18, 1952, executed by Alex Holmes to Mississippi Power and Light Company, filed March 25, 1952, at 8:00 A.M., in Book 750 at page 577 affecting that part of the W-1/2 of the E-1/2 of Section 12, T6N, R1E on the West side of the New U.S. Highway 51 as now owned by the grantor in that deed.
3. Release of Damages Clause contained in Warranty Deed dated June 21, 1957, from Theo P. Costas to State Highway Commission of Mississippi filed July 16, 1957, at 9:45 A.M. in Book 1034 at page 203.
In State Highway Comm'n v. McDonald's Corp., 509 So.2d 856 (Miss. 1987), the original decision, it was noted that Robinson and McDonald's knew that the Highway Commission was intending to reconstruct I-55 and the frontage road two months prior to its purchase in December, 1976. The Court stated:
In October, 1976, when investigating the purchase of a lot on which the restaurant could be located, Robinson learned the Mississippi Highway Department (Highway Department) contemplated a reconstruction project of I-55 and the frontage road, and that such project would terminate any access to the frontage road at the proposed location.
509 So.2d at 857.
The Court further noted that Robinson jotted down notes dated October 18, 1976, in which he set down that there would be no access from Briarwood for half a mile. With the above knowledge, McDonald's, through its subsidiary, Franchise Realty, purchased the property on December 17, 1976, from the heirs of Theo Costas. Prior to this time, on December 2, 1976, Franchise applied for a permit to construct a driveway connecting their property with I-55 frontage road between Briarwood Drive and Northside Drive in Hinds County. This permit was granted on December 6, 1976, but with the full knowledge that they knew this did not purport to grant to the said applicant any right, title, claim, or easement in or upon said highway or right-of-way appurtenant thereto. The permit also stated that the Highway Department could at any time require and compel the removal or reconstruction of said driveway or other facility therein described or referred to, as the State Highway Department deemed necessary; that all expenses of said removal or reconstruction were to be borne exclusively by the applicant, and that the State Highway Department would in no way be liable.
The property bought by McDonald's was 150 feet wide and already abutted the land owned by the Highway Department. The Highway Department proposed to take a sliver of land valued by McDonald's at $1,000. McDonald's main claim was the loss of access to the property through a permit, in which they claimed $5,000,000 in damages. McDonald's and Robinson never had access to the land as shown by the deeds previously filed, as noted by this *939 Court in its previous decision. This Court failed to grant any relief sought by the defendants in its previous decision. Further, nothing has happened since that time to the present time to require this Court reconsider its previous decision. At no time prior to this Court's previous decision has anyone attempted to determine title. Title had already been agreed upon. The land had been agreed upon. The entire lawsuit was based on a revocable permit as to whether or not they had access to it and in which they had agreed they would be liable for all damages if the Highway Department attempted to reconstruct. Clearly, McDonald's and Robinson were selling a "pig in a poke" instead of a "Big Mac" in which they were able to convince the previous jury to award them approximately $500,000. This Court, realizing that a Big Mac did not cost anywhere near that, remitted it to $1,000.00, the value for the sliver of land.
In Trustees of Wade Baptist Church v. Mississippi State Highway Comm'n, 469 So.2d 1241 (Miss. 1985) (Robertson, J.), the Court stated:
The point is that neither access nor parking are attributes or capabilities of land subject to separate valuation in eminent domain proceedings. They may be considered only insofar as they affect the value of the property remaining after taking.
In this case, since the Highway Commission already owned the land abutting the highway that it took and there was no access at that time, but only a revocable permit, and there is no "pie in the sky" as McDonald's and Robinson would have one believe, they are only entitled to the value of the sliver of land taken, which was determined to be $4,200.
The majority through its academic gymnastics attempts to circumvent the Constitution of 1890 and this Court's previous decisions for over a hundred years whereby title disputes can only be tried in the chancery courts, by citing Miss. Const. 1890, § 157, to say that cases wrongfully tried on a limited basis with the right result reached, will not be reversed on that basis alone and sent to the correct court. This again, is academic gymnastics and clearly should not stand.
Miss. Const. § 159 gives the chancery court exclusive jurisdiction in equity. Miss. Const. § 160 states:
And in addition to the jurisdiction heretofore exercised by the chancery court in suits to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction in such cases to decree possession, and to displace possession; . .. .
The majority goes on to cite pre-1890 cases to get around this constitutional authority. This writer recognizes that the constitution in Article 6, § 172, gave the legislature its power to establish such inferior courts as it deemed necessary. These courts included the Special Court of Eminent Domain, which was established originally in the justice court, then, later, as stated by the majority, reestablished in the circuit and county courts, in which were to be tried compensation issues for eminent domain proceedings. Nothing really new was granted in 1971, except to change the place of the courts from justice court to county and circuit court. No legislative power was granted to the eminent domain courts to try title disputes. With the academic gymnastics, the majority has asked two questions, the first being in the negative, as follows: Is an eminent domain court prohibited from trying title? The answer clearly is "Yes." The Legislature, in revising its statutes in 1971, never gave any power or authority to the eminent domain courts to try title disputes, as the constitution in § 160 stated that it would remain with the chancery court, nor was a constitutional amendment made to change § 160. Nowhere in the Miss.Code for the eminent domain courts, §§ 11-27-1 to 11-27-91 (1972 & Supp. 1990), has there been any jurisdiction inferred on the eminent domain courts to try title disputes. Miss. Code Ann. § 11-27-13 states that separate causes of action would be tried separately with the empowering of a twelve-person jury. Miss. Code Ann. § 11-27-15 gives only the grounds of dismissal, those being *940 that the petitioner seeking to exercise the right of eminent domain is not, in character, such as a corporation, association, district or other legal entity as is entitled to the right; that there was no public necessity for the taking of the property proposed to be condemned; and that the contemplated use alleged to be public use is not in law a public use. No authority was granted to the eminent domain court to try title. The constitution is clear that that authority vests with chancery.
The majority has now said that a jury trial must be granted to try all factual disputes of a title which our constitution does not permit.
As in many decisions, including Mississippi State Highway Comm'n v. Channell, 241 Miss. 290, 130 So.2d 563 (1961), the Court stated: "Nowhere has there been any statute giving the special court of eminent domain any power to hear or determine any question save that of compensation and that court is still enjoined by statute from dismissing the proceedings." 130 So.2d at 564.
It should be remembered that when this Court decided Whitehead v. Mississippi State Highway Comm'n, 254 So.2d 357 (Miss. 1971), in November, 1971, the Legislature had already decided and put into effect Miss. Code Ann. §§ 11-27-1 through 11-27-91. The Court in Whitehead stated that any particularities dealing with title disputes or the size of the land or the exact description of the land had to be tried in some other court than the special court of eminent domain. This Court recognized then that there was no change in the statutes as they were enacted, even though the new statutes would take effect on January 1, 1972. The Whitehead Court went on to say that any dispute between the landowner and the Commission as to the extent of the right-of-way acquired by prescription must be settled in a forum other than a special eminent domain court. The Court reversed the case and stated that the Highway Commission must describe with certainty that part of Whitehead's land it sought to condemn and that any dispute between the landowner and commission as to the extent of the right-of-way acquired by prescription must be settled in some court other than the special court of eminent domain.
What has changed from that time to the present? The answer is obvious: nothing.
In its academic gymnastics the majority has cited the Mississippi Rules of Civil Procedure to be applicable. Rule 81(a) lists twelve (12) exceptions to the rules, one of them being the eminent domain statutes, Miss. Code Ann. §§ 11-27-1, et seq. The comment to Rule 81 states:
However, in any instance in the twelve listed categories in which the controlling statutes are silent as to a procedure, such as security for costs, form of summons and methods of service of process and notices, service and filing of pleadings, computation of time, pleadings and motions, discovery, subpoenas, judgments and the like the M.R.C.P. govern.
Of the twelve exceptions listed, there are statutory provisions detailing certain procedures to be utilized, of which § 11-27-1, et seq., eminent domain, prevails.
The majority appears to have abandoned stare decisis, and has moved into an unchartered course of attempting to combine chancery and circuit courts, by sending this case back, not to a chancery court to determine title, but to the special eminent domain court, which, in this case, is the county court, to be tried by a jury. Circuit judges and county judges under our Constitution cannot try issues of fact  only a jury can try issues of fact. See Miss. Const. § 31.
Although the majority does not overrule the 1987 McDonald's decision, it attempts to apply the law of the case doctrine as laid out in Simpson v. State Farm Fire & Cas. Co., 564 So.2d 1374 (Miss. 1990), by simply stating that, since all the facts were not before this Court on a prior appeal, to enforce the rule would result in an injustice. This Court did not overrule McDonald's and should apply the law of the case to see if it meets any of the exceptions as enumerated in Simpson. State Farm Fire & Cas. Co. I submit that it does not.
Further, this Court simply sends the matter back to the special court of eminent *941 domain to determine the question of title only. What happens when title has been determined? Is this Court still retaining jurisdiction for any other issues? Does the first money judgment apply or does the second money judgment apply? Once title is determined, what effect, if any, does it have as to access, when there was none? After the finality of this case, how many bites of the apple will McDonald's have, or I guess the question should be asked, how many bites of a Big Mac should McDonald's be allowed?
One wonders why we have so many bald judges and lawyers. It is probably due to the fact that each week they pull their hair out because they don't know where they stand on a given issue. There appears to be constant change. We have what again appears to be a Court that no longer recognizes stare decisis, because McDonald's and Robinson never attempted to resolve the title prior to the first eminent domain trial.
I would affirm this case or, in the alternative, submit it to chancery court for determination of the title issue only and then apply the valuation determined by the second jury.